Ervin J. KRAMER, t/a Maryland Tank Transportation Company, also known as Maryland Milk Transportation Company, Appellant,

v.

AMERICAN FIDELITY AND CASUALTY COMPANY OF RICHMOND, VIRGINIA, Appellee.

No. 2645.

Municipal Court of Appeals for the District of Columbia.

Argued Oct. 24, 1960.

Decided Dec. 6, 1960.

---

Cornelius H. Doherty, Washington, D. C., for appellant. Wilmer S. Schantz, Jr., Washington, D. C., also entered an appearance for appellant.

William J. Donnelly, Jr., Washington, D. C., with whom Richard W. Galiher and William E. Stewart, Jr., Washington, D. C., were on the brief, for appellee.

Before ROVER, Chief Judge, QUINN, Associate Judge, and CAYTON (Chief Judge, Retired) sitting by designation under Code § 11–776(b).

CAYTON, Acting Judge.

In December 1954 Shipley Transfer, Inc., an interstate freight carrier operating under the regulations of the Interstate Commerce Commission, leased from appellant Kramer a tractor-trailer and the services of a driver for a single trip from Baltimore, Maryland, to Hazelwood, North Carolina. Kramer, who was not authorized to operate

in interstate commerce, agreed "to indemnify Lessee against * * * any loss or damage resulting from the negligence, incompetence or dishonesty of such driver(s)." Shipley agreed that it would assume control and full carrier responsibility for the operation of the vehicle and for loss or damage to the cargo.

En route to North Carolina and driven by one Schultz, a Kramer employee, the tractor-trailer was involved in a collision with an automobile in the District of Columbia. Alleging negligence, the driver of that automobile sued Schultz, Kramer and Shipley Transfer in the United States District Court for the District of Columbia. The suit was for $25,000. On the basis of the indemnity clause in the lease Shipley Transfer cross-claimed against Kramer and Schultz for indemnification. Kramer in turn cross-claimed against Shipley Transfer and Schultz, alleging that Shipley had agreed to indemnify him by virtue of a Certificate of Insurance the carrier had filed with the Interstate Commerce Commission.[1]

Before trial in the District Court the negligence suit against the parties was settled on the payment of $3000 to the plaintiff by Shipley Transfer's insurance carrier. The cross-claims, however, were then certified to the Municipal Court for trial. In the court below Shipley Transfer's insurer, American Fidelity and Casualty Company, was added by stipulation as an additional party plaintiff to Shipley's cross-claim. Judgment was for American Fidelity, and Kramer appeals.

Kramer insists American Fidelity had no right of subrogation through Shipley Transfer because under the terms of the insurance endorsement filed with the Interstate Commerce Commission the insurance company was liable only for a final judgment against its insured; and that when American Fidelity settled the District Court suit it acted as a volunteer and thereby waived any potential right it had to subrogation. A second element of Kramer's challenge of American Fidelity's subrogated status as a party in this suit is his theory that there was no privity of contract because the insurer was not a party to the lease. Kramer also argues that his promise to indemnify his lessee comprehended only those losses not covered by the insurance Shipley was required to carry as an interstate trucker.

We must hold that Kramer's contentions cannot be sustained. In the first place American Fidelity was not a volunteer when it settled the District Court action against its insured. It is correct to say that "the party making payment is a volunteer if, in so doing, he has no right or interest of his own to protect, and acts without obligation, moral or legal, and without being requested by anyone liable on the obligation."[2] American Fidelity clearly had an interest, if not a duty, to settle the suit against Shipley Transfer.[3] If that suit were to go to trial and a judgment be entered against the insured, there was at least some likelihood that American Fidelity would be forced to pay a larger sum than was involved in the settlement.[4] Admittedly, its liability under its Interstate Commerce Commission insurance endorsement was for "final judgment" against the insured; but that endorsement was required for the protection of the general public[5]

1. 49 U.S.C.A. § 315 authorizes the Interstate Commerce Commission to require carriers to have certain insurance coverage before they operate in interstate commerce.

2. 50 Am.Jur., Subrogation, § 22. See also 83 C.J.S. Subrogation § 9; Restatement, Restitution, § 76.

3. See Employers Mut. Liability Ins. Co. of Wisconsin v. Pacific Indemnity Co., 167 Cal.App.2d 369, 334 P.2d 658.

4. In the court below Kramer might have questioned the reasonableness of the setlement, but he failed to do so. See 8 Appleman, Insurance Law and Practice, § 4931; Chicago, R. I. & P. R. Co. v. Dobry Flour Mills, 10 Cir., 211 F.2d 785, certiorari denied 348 U.S. 832, 75 S.Ct. 55, 99 L.Ed. 656.

5. See National Mutual Ins. Co. of District of Columbia v. Liberty Mutual Ins. Co., 90 U.S.App.D.C. 362, 365, 196 F.2d 597,

and was not designed to prevent amicable settlements of claims by the insurer. To hold that American Fidelity was not entitled to subrogation upon its settlement of the District Court suit, as urged by Kramer, would seriously undermine the public interest in the peaceful compromise and settlement of claims.

■ Not much need be said concerning Kramer's contention that American Fidelity could not bring suit on the lease because it was not a party to it. This claim also goes to American Fidelity's right to be a subrogee of Shipley Transfer. But subrogation does not depend on privity of contract; it is "based on principles of equity and natural justice and was adopted to compel the ultimate discharge of an obligation by a person who in equity and good conscience ought to pay it." Evans v. United States Fidelity & Guaranty Co., D.C.Mun.App., 127 A.2d 842, 848.

■ Finally, we consider Kramer's claim that he promised to indemnify Shipley Transfer only for losses not covered by the Interstate Commerce Commission insurance endorsement.[6] This interpretation is contrary to the unambiguous language of the indemnity clause which clearly bound Kra-

mer to reimburse Shipley Transfer for *all* losses due to the negligence of Kramer's driver.[7] In short, Kramer agreed to indemnify Shipley Transfer in all cases where, as between themselves, he would be primarily liable. Kramer's employee was driving the truck when it was involved in the collision that gave rise to the negligence suit, and it was just for such cases of primary liability that Kramer had promised to indemnify. Once Shipley Transfer paid the settlement, through its insurer, it was entitled to recover the full amount from Kramer;[8] and, as we have said above, the insurer was subrogated to Shipley's claim against Kramer.

■ There is no Interstate Commerce Commission regulation that prevents a carrier from protecting itself in the manner Shipley Transfer did in its lease with Kramer. Whatever indemnity arrangements the carrier makes with the lessors of trucking equipment, the public is still protected by the insurance a carrier is required to have as an interstate trucker.[9]

Affirmed.

ROVER, C. J., sat during the argument of this case but died before it was decided.

600, certiorari denied 344 U.S. 819, 73 S.Ct. 15, 97 L.Ed. 638; Massey v. War Emergency Co-Operative Ass'n, 209 S.C. 292, 39 S.E.2d 907.

6. Kramer's argument essentially is that he promised excess insurance coverage rather than indemnity.

7. See Law v. Holland Transp. Co., 326 Mass. 651, 96 N.E.2d 286, and Newsome

v. Surratt, 237 N.C. 297, 74 S.E.2d 732, wherein indemnity clauses identical to the one here were at issue; and see also Carter v. E. T. & W. N. C. Transp. Co., 35 Tenn.App. 196, 243 S.W.2d 505.

8. See George's Radio v. Capital Transit Co., 75 U.S.App.D.C. 187, 190, 126 F.2d 219, 222.

9. Supra note 7.