**FIRST MARYLAND FINANCIAL SERVICES CORPORATION, et al., Appellants,**

v.

**DISTRICT–REALTY TITLE INSURANCE CORPORATION, Appellee.**

**DISTRICT–REALTY TITLE INSURANCE CORPORATION, Appellant,**

v.

**Theda L. VAUGHN, et al., Appellees.**

**Nos. 87–100, 87–99.**

District of Columbia Court of Appeals.

Argued March 24, 1988.
Decided Oct. 13, 1988.

Samuel C. Steelman, Jr., College Park, Md., for appellants/cross-appellees.

Leonard C. Collins and Robert W. Mance, III, Washington, D.C., also entered an appearance, for appellees in No. 87–99.

David H. Cox, with whom Mary Lynn Reed, Washington, D.C., was on the brief, for appellee/cross-appellant. Patricia D. Gurne, Washington, D.C., also entered an appearance, for appellee/cross-appellant.

Before PRYOR, Chief Judge, and MACK and FERREN, Associate Judges.

MACK, Associate Judge:

In this consolidated appeal, appellant, First Maryland Financial Services Corporation (hereinafter "First Maryland"), contends that, as a holder in due course of a negotiable note secured by a deed of trust on realty, its rights to the realty are superior to the claims of appellee/cross-appellant, District–Realty Title Insurance Corporation (hereinafter "District–Realty"). Concluding that First Maryland does not have rights to the property superior to those of District Realty, we affirm. As to District–Realty's claim for attorneys' fees, we hold that the trial court did not abuse its discretion in denying an award of such fees.

On July 6, 1984, realty known as 1125 Kalmia Road, N.W. was sold at a foreclosure sale for $71,000. District–Realty was to handle the settlement sale for Thornton W. Owen, Jr. and Charles J. Kay, substitute trustees and sellers of the Kalmia Road property. The purchaser of the property was Suburban Associates and its affiliates. John R. Larkins, a representative of Suburban Associates, presented a check, drawn on the account of Suburban Associates, presented a check, drawn on the account of Suburban Associates, payable to the order of District–Realty in the amount of $70,484.18. Upon receipt, District–Realty deposited this check and recorded the trustees' deed to Suburban Associates. In accordance with the settlement agreemnt, District–Realty recorded the deed and disbursed payments to the sellers, Owen and Kay. When Suburban's check was returned twice by First American Bank of Maryland due to insufficient funds, District–Realty unsuccessfully sought reimbursement for its output of funds. Thereafter, on November 21, 1984, District–Realty filed suit (*District–Realty Title Insurance Corporation v. Suburban Associates, Ltd., et al.*, 13639–84–R.P.) for the entry of declaratory judgment that it was the equitable and legal owner of the Kalmia Road property, alleging that Larkins and Suburban Associates merely held bare legal title to the property. District–Realty contended that in order to avoid unjust enrichment and fraud, Larkins and Suburban Associates should be viewed as constructive trustees for the benefit of District–Realty. District–Realty asked that any purported transfer by Suburban be enjoined on the basis of breach of contract, fraudulent misrepresentation, and conversion.

On December 13, 1984 (some three weeks after District–Realty's commencement of the real property action), Suburban Associates, by Larkins, transferred legal title to Theda L. Vaughn. There were two deeds of trust imposed on the Kalmia road property. Steven Madeoy was the beneficiary of both deeds of trust. Michael J. Friedman and Rhona Friedman were the named trustees. On December 18, 1984, First Maryland purchased from the beneficiary, Madeoy, a negotiable note together with the accompanying deed of trust encumbering the property by assignment from Madeoy for the principal sum of $50,000.

On March 15, 1985, a default judgment was entered in favor of District–Realty against Suburban Associates and John Larkins for $70,484.18. The order stated that the judgment was "without prejudice to any other relief sought by District–Realty." On May 2, 1985, District–Realty brought a second action adding Vaughn and the Friedmans as defendants seeking a declaratory judgment that, as of July 6, 1984, Suburban Associates held legal title to the Kalmia Road property as constructive trustee for District–Realty (*District–Realty Title Insurance Corporation v. Theda Vaughn, et al.*, 3157–85–R.P.). District–Realty argued that it held an equitable interest in the property in the amount of $70,484.18 and that thus the transfer of the realty to Vaughn was fraudulent and void. Thus, Vaughn held legal title to the realty as constructive trustee for District–Realty. Moreover, District–Realty argued that any further transfer of Vaughn's bare legal title (*i.e.*, First Maryland's purchase of a negotiable note from Madeoy with an accompanying deed of trust on the Kalmia Road property)

should be enjoined until further order of the court. District–Realty also sought $100,000 in attorneys' fees.

## I.

Upon the motion of the Friedmans, both actions were consolidated on June 28, 1985. Madeoy was granted leave to intervene as a defendant on the grounds that he was a party secured by one of the Friedmans' deeds of trust after accepting a promissory note from Vaughn. First Maryland moved to intervene on the grounds that it was a holder of the Vaughn promissory note which was endorsed by Madeoy and secured by one of the Friedmans' deeds of trust. This motion was granted on January 13, 1986. Summary judgment was entered in favor of District–Realty on October 23, 1986, against Suburban Associates, Larkins, Vaughn, Madeoy, the Friedmans, and First Maryland.[1] On December 12, 1986, First Maryland's motion to alter or amend the judgment was denied. The court also denied District–Realty's prayer for attorneys' fees. On this appeal, First Maryland challenges the judgment entered against it and the denial of its motion to alter or amend the judgment. District–Realty, while arguing for affirmance of the trial court's decision, reasserts its claim for attorneys' fees.[2]

## II.

Pointing to its purchase of a negotiable note in the principal sum of $50,000, and the purported encumbrance of the real property in question, First Maryland raises numerous arguments in an attempt to show that as a holder in due course, its rights are superior to those of District–Re-

alty. We find these contentions unpersuasive.

■ We look first to the arguments directed at downgrading the status of District–Realty. The contention that District–Realty volunteered to pay the amount on Suburban's dishonored check for $70,-484.18, and thus cannot have an equitable lien on the property, is meritless. It is undisputed that District–Realty was engaged to handle this settlement. As District–Realty correctly points out, "[i]n its capacity as escrow agent, [it] was to receive monies and instruments necessary to close the transaction, to record the instruments after due execution and to make disbursements in accordance with the settlement statement approved by the sellers and purchasers." District–Realty's Complaint for Declaratory Judgment, *District–Realty v. Vaughn*, Civ. No. 3157–85 (Super.Ct.D.C. May 2, 1985). Moreover, it is well-settled that a check imports valid consideration. *See Isard v. Applestein*, 144 A.2d 925, 928 (D.C.1958). Here District–Realty acted upon the well-settled presumption that a negotiable instrument issues for valuable consideration. *See Carter v. Purcellville National Bank*, 158 A.2d 325, 326 (D.C.1960). Thus, its acceptance of the check does not constitute "absolute payment" and waiver of its equitable lien on the property. This is not an accord and satisfaction. *See* CALAMARI & PERILLO, CONTRACTS § 4–12, at 153–56 (2d ed. 1977).[3]

■ The argument that District–Realty does not have a vendor's lien on the property is true but avails appellant nothing. This theory (vendor's lien, or, more accurately, "grantor's lien") is simply inapplica-

1. With the exception of First Maryland, none of the named parties appealed the entry of summary judgment against them.

2. District–Realty does not seek attorneys' fees against First Maryland.

3. The cases cited by appellant are inapplicable to this case. *See Helvering v. Ethel D. Co.*, 63 U.S.App.D.C. 157, 159, 70 F.2d 761, 763 (1934) (a tax commissioner who requests and obtains from a taxpayer a new waiver concerning the subject matter of the original waiver, which the commissioner found unsatisfactory, cannot later claim rights under the first waiver); *Proud-*

*ley v. Fidelity & Guaranty Fire Corp.*, 345 Pa. 385, 29 A.2d 48 (1942) (voluntary payment of insurance policy premiums by finance company and an insurance company's obligation to return to the insured the unearned premiums on unauthorized cancellation of policies). Interestingly, one of the insurance cases cited by appellant is analogous to this case. *See Kramer v. American Fidelity & Casualty Co.*, 165 A.2d 924, 926 (D.C.1960) ("American Fidelity was not a volunteer when it settled the District Court action against its insured.").

ble to the facts of this case. Admittedly, District–Realty is not an unsecured, unpaid vendor (or grantor), and therefore it has no equitable right to "reach the property—the title to which [it] had transferred—to satisfy the debt which constitutes the consideration for the transfer." *Kosters v. Hoover*, 69 U.S.App.D.C. 66, 67–68, 98 F.2d 595, 596–97 (1938) (footnote omitted). However, as escrow agent for this settlement, District–Realty has, in performance of its settlement duties, incurred expenses as a result of Suburban Associates' dishonored check. Thus, District–Realty has an equitable interest in the amount of $70,484.18, rather than a lien on the underlying real estate. Indeed, the vendors (Thornton W. Owen, Jr. and Charles J. Kay) themselves do not have a vendor's lien as they have already been paid by the escrow agent, District–Realty.

▪ Similarly, appellants' arguments that District–Realty does not have any subrogation rights is irrelevant to our decision. Here we do not have a suretyship, and District–Realty was under no compulsion to satisfy the obligations of another. *See District of Columbia v. Aetna Insurance Co.*, 462 A.2d 428, 430 (D.C.1983). Rather, District–Realty "has instituted this action in its own right to establish title to the [property] in its own name." The same is true with respect to the argument that District–Realty, by failing to follow customary practices, voluntarily assumed the risk that the $70,000 check would be dis-

honored. Assumption of the risk is a defense to an action for negligence. *See* PROSSER & KEETON ON TORTS § 68, at 486–92 (5th ed. 1984). This is not a negligence action or a defense; this is an action for title to property.

▪ First Maryland fares no better in arguments aimed at upgrading its own status. Asserting that its rights are superior to those of District–Realty, First Maryland argues that it is a holder in due course of the security interest as well as the negotiable instrument that paid for it.[4] First Maryland took the negotiable note from Madeoy for value ($50,000), in good faith,[5] and without notice that it was overdue or had been dishonored. However, even if First Maryland is therefore a holder in due course of that instrument, its claim to the disputed realty cannot take priority over District–Realty's interest. Since the original $70,484.18 check from Suburban Associates, which the escrow accepted in good faith, was dishonored, the transfer of the Kalmia Road property was tainted. Suburban Associates therefore had nothing more than bare legal title to grant to any future purchaser, and even this title was clouded by litigation commenced by District–Realty. *See Pyne v. Pyne*, 81 U.S.App.D.C. 11, 13, 154 F.2d 297, 299 (1946) (a grantor can convey or assign no more interest in realty than that which he or she has).

▪ Thus, First Maryland is a "holder" of a note,[6] but not a holder in due course of

---

**4.** D.C. Code § 28:3–302 (1981) provides in relevant part:

(1) A holder in due course is a holder who takes the instrument

    (a) for value; and

    (b) in good faith; and

    (c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person.

**5.** District–Realty argues that fraud was present in the transaction between Madeoy and First Maryland as "First Maryland failed to elaborate upon the circumstances surrounding its acquisition, in mid-December 1984, of the promissory note and Deed of Trust on the Kalmia Road property from Madeoy, who had received a Deed of Trust on the property from Vaughn, purportedly in exchange for a fifty thousand dollar ($50,000) loan." Brief for Appellee/Cross-Appellant *District-Realty Title Ins.*

*Corp., First Maryland Financial Services Corp. v. District Realty Title Ins. Corp.*, Nos. 87–99, 87–100, at 21. Citing *Baxter v. Palmigiano*, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976), District–Realty argues that a negative inference can be used against Madeoy (and implicitly against First Maryland) by his invocation of the Fifth Amendment privilege during deposition testimony. Given our conclusion that First Maryland could not have superior rights as against the real property because of a pending lawsuit which clouded title, we do not reach whether or not Madeoy or First Maryland were fraudulent in their dealings.

**6.** As holder of the note (and not the underlying security), First Maryland can pursue an action against Madeoy and Vaughn. Indeed, it is the underlying debt, not the security, which is the focus of a creditor's action against its debtor.

the underlying security. First Maryland cannot be said to have superior rights as to the property because of infirmities in its chain of title aired by a pending lawsuit filed before First Maryland agreed to accept the property as security for its purchase of a note. As discussed above, in order to be a holder in due course, the holder of an instrument must, among other things, take the instrument without notice of any defense against or claim to it on the part of any person. D.C. Code § 28:3–302(1)(c) (1981). However, a purchaser has notice of a claim or defense against an instrument if he has notice that the obligation of any party is voidable in whole or in part. D.C. Code § 28:3–304(1)(b). The common law doctrine of *lis pendens* has the legal effect of constructive notice. *Anderson v. Reid*, 14 App.D.C. 54, 68 (1899); *see also* 8 Thompson on Real Property § 4308, at 334 (1963 repl.). Under *lis pendens*, "nothing relating to the subject matter of the suit could be changed while it was pending and one acquiring an interest in the property involved therein from a party thereto took such interest subject to the parties' rights as finally determined[,] and was conclusively bound by the results of the litigation." 8 Thompson on Real Property, *supra*, at 331; *see also Wilkinson v. District of Columbia*, 22 App.D.C. 289, 295 (1903). "During the pendency of an equitable suit, neither party to the litigation can alienate the property in dispute, so as to affect the rights of his opponent." 2 Pomeroy's Equity Jurisprudence § 633, at 729 (5th ed. 1941). Yet in this case, First Maryland seeks to benefit from just such a sale by litigant Madeoy, purportedly affecting the rights of District–Realty. Since the District of Columbia has enacted no *lis pendens* statute, and this suit raises the issue of equitable title, these common law principles of *lis pendens* apply. Thus, First Maryland could not become a holder in due

course, since it had constructive notice, and *lis pendens* further barred alienation of title to the security interest.

Thus, having previously paid valuable consideration for the Kalmia Road property, upon Suburban Associates' refusal to tender funds to cover the overdrawn check, District–Realty became legal and equitable owner of the realty. Suburban Associates, without the payment of valuable consideration, could not have prevailed on any claim to be the "owner" of the property. It held, if anything, nothing more than bare legal title to the property. To avoid unjust enrichment, Suburban Associates would have been characterized as "constructive trustee" for the benefit of District–Realty. *See Hertz v. Klavan*, 374 A.2d 871, 873 (D.C. 1977) (citations omitted) ("A constructive trust is a flexible remedial device used to force restitution in order to prevent unjust enrichment. Inequitable conduct short of fraud will cause equity to employ this remedy."). Thus, the first significant infirmity in the chain of title to the Kalmia Road property was the purchaser's failure to tender valuable consideration.

■ The second infirmity was the "transfer" of the property from Suburban Associates, by its representative Larkins, to Theda Vaughn on December 13, 1984.[7] Some three weeks before this transfer, District–Realty filed suit against Suburban Associates. Under the rules of the Superior Court, all actions involving title to real property are designated by the suffix "RP." *See* Super.Ct.Civ.R. 3–I. "The public records give constructive notice of their contents, and it is the duty, as it is the general usage, of all persons dealing with the transfer of real estate, to have recourse to such records for the ascertainment of title, if they would be secure in their purchase." *Anderson v. Reid*, 14 App.D.C. 54, 68 (1899). Here all subsequent transfers of the Kalmia Road property were tainted by the original purchasers' default in pro-

*See Yasuna v. Miller*, 399 A.2d 68, 72 (D.C.1979) ("although the transaction may involve both a negotiable instrument (promissory note) and a trust deed, liability of the maker-mortgagor [*i.e.,* Madeoy and Vaughn] rests on the underlying debt").

7. The deposition testimony of Ms. Vaughn raises serious questions about the manner in which the transfer was conducted by Larkins. Ms. Vaughn herself characterized the transaction as a "mock settlement." However, we do not reach the issue of fraud on appeal.

viding the agreed upon consideration. Thus, not only are the Larkins–Vaughn and Madeoy–First Maryland transfers void because there was no legal and equitable interest in the "owner" (Suburban Associates) of the property, but also such transfers are void because there was a cloud on the title which had not been removed. In the instant case, there was pending litigation to determine title to the property. In this context, First Maryland, which failed to perfect title examination, cannot argue that it should have priority status over the rights of District–Realty. Since Suburban Associates held nothing more than bare legal title, Ms. Vaughn had nothing more to transfer than bare legal title. Thus, Mr. Madeoy's deed of trust on the Kalmia Road property, which he later "transferred" to First Maryland as underlying security on the $50,000 promissory note, was void.

### III.

■ District–Realty seeks attorneys' fees against Larkins and Suburban Associates. Specifically, District–Realty alleges that since there was constructive notice that the title to the Kalmia Road property may have been clouded, then the subsequent transfers caused it to initiate a second lawsuit which resulted in substantial litigation fees. We disagree. Indeed, District–Realty itself concedes that "the only viable recourse available to recover its $70,-484.18, with accrued interest, was to establish its legal and equitable title to the Kalmia Road property." Thus, District–Realty had to join all purported "owners" in the chain of title. Significantly, these actions were later consolidated. As we stated in *Synanon Foundation, Inc. v. Bernstein,* 517 A.2d 28 (D.C.1986), "[a]ttorneys' fees for bad faith litigation are therefore proper only in the presence of extraordinary circumstances or when dominating reasons of fairness so demand." *Id.* at 37 (citations omitted). This is not such a case.

Accordingly, we affirm both the trial court's entry of summary judgment and its denial of attorneys' fees.

AFFIRMED.