**DISTRICT OF COLUMBIA REDEVELOPMENT LAND AGENCY, Appellant/Cross–Appellee,**

v.

**Landon G. DOWDEY, Appellee/Cross–Appellant.**

**Nos. 90–CV–361, 90–CV–514.**

District of Columbia Court of Appeals.

Argued Dec. 17, 1990.

Decided Dec. 30, 1992.

Robert Vieth, with whom Stephen Colangelo was on the brief, for appellant/cross-appellee, District of Columbia Redevelopment Land Agency.

Marya C. Young, for appellee/cross-appellant, Landon G. Dowdey.

Before TERRY, STEADMAN, and WAGNER, Associate Judges.

WAGNER, Associate Judge:

The District of Columbia Redevelopment Land Agency (RLA) appeals from a judgment of the trial court holding that RLA deprived appellee, Landon G. Dowdey (Dowdey), of just compensation for his attorney's lien on real property which RLA acquired on behalf of the government by eminent domain, and awarding Dowdey a judgment for $56,601.16 with interest at the rate of six percent per annum from March 29, 1973. Appellee cross-appeals from the denial of his requests for interest at prevailing market rates and attorney's fees.

On appeal, RLA contends that the trial court erred in entering judgment for appellee because: (1) the District of Columbia does not recognize attorney's liens, and the lien, if any, did not attach before RLA took the property; and (2) res judicata and collateral estoppel principles bar appellee's claim against RLA. In his cross-appeal, appellee contends that the trial court erred

in applying the statutory interest rate instead of the rates which would provide just and reasonable compensation for his interest. We hold that: (1) appellee acquired an attorney's lien by contract prior to condemnation of his client's property which transferred to the funds deposited by RLA into the registry of the court at the commencement of the condemnation proceeding; (2) although on notice of appellee's claim, RLA failed to join him in the proceeding as required by statute as a result of which appellee was not compensated for his property; (3) appellee/cross-appellant is not entitled to attorney's fees; and (4) appellee/cross-appellant is entitled to a determination of the amount of interest which will compensate him for the property taken. Therefore, we affirm the judgment of the trial court, except for its ruling on the amount of interest awarded and remand for consideration of the question consistent with this opinion.

## I.

The events out of which the present controversy arises commenced in early 1972. William C. and Sofrona Baylies (the Baylies) retained Dowdey to resist foreclosure on their real property located at 1711–14th Street, N.W. in the District of Columbia until the anticipated condemnation of the property by RLA. It is undisputed that the Baylies and Dowdey made an oral agreement for attorney's fees under the terms of which the Baylies were to pay appellee one-third of the equity in the 14th Street property which Dowdey either preserved or recovered on their behalf.[1] On April 24, 1972, Dowdey filed an action in the Superior Court of the District of Columbia on behalf of the Baylies to prevent foreclosure on the property.[2] Dowdey's efforts were successful in that foreclosure was delayed until RLA filed suit for condemnation of the property in the United States District Court for the District of Columbia.[3] In accordance with the condemnation statute, RLA deposited into the court registry $290,000 "to the use of the persons entitled" for 1711–14th Street, N.W., representing the estimated fair compensation.[4]

The same day that RLA filed suit, Dowdey filed an action in the United States District Court for the District of Columbia against the Baylies seeking a declaration and enforcement of an attorney's lien against the Baylies' equity in the property.[5] Although RLA knew of Dowdey's claim in the property, it never joined him as a party in the condemnation proceeding.[6] On March 29, 1973, the District Court ordered release of the $290,000 deposited by RLA to Shenandoah Land Title Company (Shenandoah), purportedly the authorized agent for Title Insurance Company of Minnesota (Minnesota Title). The order required Shenandoah to distribute the proceeds for payment and discharge of "all taxes, as-

---

1. Dowdey had similar fee arrangements with the Baylies for legal services relating to other properties. Appellant asserts in its reply brief that there is no record evidence of the contract. At trial, however, RLA's counsel not only stipulated to the facts supporting the existence of the oral agreement, but also that Dowdey was successful in resisting the foreclosure. While appellant does not argue that the statute of frauds bars appellee's claim, we note that it has been held that while "[a] mere oral agreement to mortgage land ... is within the statute of frauds, ... where the obligee has fully performed his part of the agreement by furnishing the consideration for which the mortgage was to be given, that objection does not lie and the promise or contract has effect as an equitable mortgage." 1 Symons, Pomeroy's Equity Jurisprudence § 1237 at 704 (5th ed. 1941).

2. See *1711 14th Street, Inc. v. Providence Savings and Loan Assoc., et al.,* C.A. No. 3059–72.

3. *D.C.R.L.A. v. Two Parcels of Land,* C.A. No. 162–73 (January 29, 1973).

4. See D.C.Code § 16–1353 (1967). Unless otherwise indicated, all citations to the eminent domain statute are to the 1967 edition of the D.C.Code under which the condemnation occurred.

5. *Dowdey v. Baylies,* C.A. No. 163–73.

6. RLA did name Dowdey as a party in the condemnation proceeding in his capacity as trustee for a second property located at 1719–14th Street, N.W., which was also the subject of the action. RLA conceded at trial below that it should have joined Dowdey as a defendant in the action with respect to the condemnation of the 1711–14th Street, N.W. property.

sessments, liens and encumbrances against the property on the date of taking" and the redemption of any tax sales thereof, with the balance to be paid over to the parties entitled to it. Dowdey did not receive any money for his claim.

Two years later, on April 4, 1975, the district court entered judgment for Dowdey against the Baylies in the amount of $56,-601.16, representing the amount of Dowdey's "attorney's lien against the sum deposited in the Registry of the Court in lieu of property condemned ..." [7] The district court (J. Gasch) made the following finding of fact in that action which is pertinent to the arguments on appeal:

> [Dowdey] is entitled to an attorney's lien against defendant's equity in premises 1711–14th Street, N.W., in the amount of Fifty-six Thousand and Six Hundred One Dollars and sixteen cents ($56,601.16).

The court also found that the funds deposited by RLA for the property were disbursed without payment to Dowdey, although the defendants had actual notice of Dowdey's claim.[8] The Baylies never paid the judgment, and Dowdey filed other actions in an effort to collect the fee.

On August 3, 1976, Dowdey sued RLA's title insurance company, Minnesota Title, in the United States District Court for the District of Columbia, alleging that Minnesota Title wrongfully disbursed the proceeds of the condemnation funds without paying Dowdey even though it was on notice of Dowdey's suit to declare and enforce an attorney's lien.[9] Following a trial by the court, the district court entered judgment for Minnesota Title in 1980, finding that Dowdey failed to establish that Minnesota Title authorized Shenandoah to disburse the condemnation proceeds from the 14th Street property and that Shenandoah had acted on behalf of the Baylies, rather than Minnesota Title, in making the disbursement. Pertinent to arguments raised on appeal by RLA, the district court in its Memorandum Opinion (J. Parker) also rendered the following interpretation of Judge Gasch's order in *Dowdey v. Baylies:*

> Judge Gasch did not view Dowdey's claim as a charge or encumbrance against the 14th Street property. Rather, he found that a lien attached to the Baylieses' [sic] share of the proceeds in accordance with the parties' agreement and therefore rendered a money judgment against Baylies and his wife.

Dowdey appealed from the judgment in the *Minnesota Title* litigation. The United States Court of Appeals for the District of Columbia Circuit affirmed the trial court's decision,[10] stating in its unpublished order:

> Substantially for reasons stated by the District Court, we agree with the result reached in this case. In particular, we find no solid ground for disturbing the District Court's conclusion that (1) appellant Dowdey's lien attached to the Baylies' share of the condemnation proceeds rather than to the property that was the subject of the condemnation proceedings,
>
> . . .

Thus, Dowdey was unable to recover the amount of his lien from Minnesota Title.[11]

---

7. *See Dowdey v. Baylies, supra* note 5. The parties have stipulated that the balance due on Dowdey's fee claim is $53,532.40. On remand, the trial court should amend the principal amount it ordered appellant to pay to comply with this stipulation.

8. The defendants in *Dowdey v. Baylies, et al.,* were William C. and Sofrona Baylies, Kennon Bryan, who was sued as co-trustee to satisfy certain technical requirements, and Seventeen-Eleven Fourteenth Street, Inc., a corporation controlled by the Baylies in which the property was titled.

9. *Dowdey v. Title Insurance Company of Minnesota, et al.,* C.A. No. 76–1441.

10. *Dowdey v. Title Insurance Company of Minnesota,* 672 F.2d 893 (D.C.Cir.1981).

11. Appellee filed three motions in the U.S. District Court to compel restoration of the funds into the registry. The first motion, which was filed on July 24, 1974 against the Baylies, their corporation, Shenandoah's president, and Minnesota Title, was denied without prejudice to the filing of a subsequent motion after the amount, if any, of the lien was determined in *Dowdey v. Baylies.* The second motion, filed on October 2, 1975, sought to compel Seventeen-Eleven Fourteenth Street, Inc., Minnesota Title, Shenandoah, and their agents to pay Dowdey. The court denied the motion without prejudice to refiling after disposition of pending appeals (apparently the appeal in *Dowdey v. Baylies* ).

On March 27, 1987, Dowdey filed the complaint in Superior Court against RLA out of which the present appeal arises. The case was tried by the court on stipulated facts. The trial court determined that Dowdey had an equitable lien on the property which was perfected before RLA's condemnation action and that RLA deprived appellee of his property without just compensation by failing to join him in the condemnation proceeding pursuant to Fed.R.Civ.P. 71A(c)(2). The trial judge accepted as the law of the case the ruling of the motions judge on RLA's motion to dismiss and Dowdey's motion for summary judgment, which determined the following:

1) [d]efendant had been under a legal duty to join [p]laintiff in the condemnation;

2) [p]laintiff had an equitable lien on the equity of the real property at issue here under District of Columbia law and accordingly [p]laintiff had a right of recourse against the [d]efendant regardless of his possible recourse against the title company;

3) [p]laintiff's claim was timely filed because the applicable statute of limitations is fifteen years and;[12]

4) [d]efendant could adduce at trial all evidence to support his claimed equitable defenses.

The trial court determined that appellee had a lien on the property which transferred to the fund when deposited into the court registry by RLA. Noting that Baylies' equity was cut off as soon as the funds were deposited, the trial court concluded that neither the decision in *Dowdey v. Baylies* nor that in the *Minnesota Title* litigation precluded a suit against RLA for wrongfully cutting off Dowdey's perfected equitable lien on the 14th Street property. Since appellee claimed an interest in the property, the trial court determined that

Dowdey should have been joined in the condemnation proceedings pursuant to Fed. R.Civ.P. 71A(c)(2).

## II.

Appellant RLA argues that Dowdey cannot prevail on his claim against RLA for compensation because there was no attorney's lien on the property at the time RLA acquired it. The principal reasons advanced by RLA for its position are that: (1) under the law of the District of Columbia, an attorney's lien does not attach to the client's real property for fees for services rendered by the attorney to secure title or protect the client's property; and (2) Dowdey had no interest in the land at the time RLA acquired title. Dowdey contends he did not claim that he acquired a lien on the real property by reason of the mere performance of legal services. Rather, Dowdey argues that his lien for a contingent fee was created by an express agreement with his clients and that such a lien is cognizable under local law. Dowdey contends that the filing of his lawsuit against his former clients to enforce the lien after the condemnation proceeding does not defeat the attachment of the lien upon the land which was created by agreement prior to condemnation and that RLA's deposit of funds into the court registry simply transferred his lien to the fund, which is in equity treated as the land. *See Mayor, Etc., of Hagerstown v. Groh*, 101 Md. 560, 61 A. 467, 469 (1905). Thus, Dowdey asserts, the trial court properly concluded that RLA was required to join him as a party in the condemnation proceeding when it learned of his claim and to compensate him for it. The trial court agreed and concluded as a matter of law that RLA had a duty to join Dowdey "who[ ]possessed an equitable interest in the fund in lieu of the property"

Dowdey filed a supplemental motion to compel payment on March 10, 1976, but the court dismissed it, agreeing with defendants that Dowdey should pursue an independent action to satisfy his alleged lien. Dowdey appealed from the ruling, but he voluntarily dismissed the appeal.

12. The motions judge found that Dowdey's suit was based on an equitable lien on the real property under District of Columbia law. Therefore, the court held that the fifteen year statute of limitations applied and Dowdey's claim was not barred. *See* D.C.Code § 12–301(1) (1989). Appellant does not challenge on appeal the trial court's ruling on the statute of limitations question.

and that "[RLA] deprived him of that interest without due process."

### III.

▆▆▆ The District of Columbia has no statute providing for attorney's liens; therefore, their creation or existence are governed by common law rules. *Elam v. Monarch Life Ins. Co.,* 598 A.2d 1167, 1168 n. 2 (D.C.1991). Such liens are recognized and enforceable in the District of Columbia. *Id.* at 1171. If a client " 'sufficiently indicates an intention to make some particular property or fund a security for a debt or other obligation', an equitable lien is created 'on the property so indicated.' " *Id.* (quoting *DeWinter v. Thomas,* 34 App.D.C. 80, 84 (1909), *cert. denied,* 215 U.S. 609, 30 S.Ct. 411, 54 L.Ed. 347 (1910); *see also Pink v. Farrington,* 67 App.D.C. 314, 315, 92 F.2d 465, 466 (attorney's lien created on fund not in possession when underlying contractual basis exits, not merely performance of legal services leading to judgment), *cert. denied,* 302 U.S. 741, 58 S.Ct. 143, 82 L.Ed. 572 (1937)). Where it reasonably appears that the attorney and client by contract looked to a particular fund or source for payment of a contingent fee, this court has recognized an equitable lien against the property as intended by the parties. *See Elam,* 598 A.2d at 1171; *see also Continental Casualty Co. v. Kelly,* 70 App.D.C. 320, 322, 106 F.2d 841, 843 (1939). The principle applies whether the particular property involved is real or personal property. *Ingersoll v. Coram,* 211 U.S. 335, 368, 29 S.Ct. 92, 100, 53 L.Ed. 208 (1908); *Walker v. Brown,* 165 U.S. 654, 664, 17 S.Ct. 453, 457, 41 L.Ed. 865 (1897).

In *Continental Casualty,* appellees/attorneys agreed to bring an action in the District of Columbia on behalf of their client to recover an amount owed to the client. In return for their services, the parties agreed the attorneys would be paid a one-third contingent fee out of any judgment obtained. The appellate court followed its earlier decision in *Kellogg v. Winchell,* 51 App.D.C. 17, 20, 273 F. 745, 748 (1921) in concluding that the contract "gave the attorney an interest in the cause of action," which was "in the nature of an equitable lien." *Continental Casualty,* 70 App.D.C. at 322, 106 F.2d at 843. The court explained:

> [i]t is clear from the agreement that from the time of its making there was a distinct appropriation of the fund by the client and an agreement that the attorneys should be paid out of it. This ... creates rights different from those which arise when the attorney looks to the personal responsibility of the client for payment of the fee.... This right is a contract lien and even if, as has been suggested, the lien is inchoate before judgment, it relates back and takes effect from the time of the commencement of the suit and is, therefore, superior to *rights of set off which arise subsequently.*

*Id.*

Principles determinative of the outcome of this case can also be extracted from *Barnes v. Alexander,* 232 U.S. 117, 34 S.Ct. 276, 58 L.Ed. 530 (1914), upon which the trial court relied to find that Dowdey had an equitable lien on the 14th Street property. In *Barnes,* an attorney instituted an action for an accounting of property received in a settlement of certain mining suits which Barnes helped to achieve. The client had agreed to pay Barnes one-fourth of the property recovered and, upon settlement, Barnes sued to enforce the agreement. Barnes had retained appellees, also attorneys, to assist with the client's claim, promising them one-third of the one-fourth contingent fee Barnes and his colleagues would receive if the case were concluded successfully. Appellees intervened in Barnes' accounting suit for their one-fourth contingent fee. The Arizona Supreme Court determined that the contract between the attorneys created a lien in the fund in appellees' favor in the amount agreed upon and that intervention in Barnes' suit against the owners of the mining rights was a proper way to enforce the lien. The Supreme Court affirmed, holding that the agreement to pay a contingent fee out of a certain fund constitutes a lien upon the fund the moment the fund is received. 232 U.S. at 121, 34 S.Ct. at 277.

The court started with the principle "that an informal business transaction should be construed as adopting whatever form consistent with the facts is most fitted to reach the result seemingly desired." *Id.* at 120, 34 S.Ct. at 277. The critical point, the court concluded, was not whether the parties used words of contract instead of words of conveyance, but rather the scope of the parties' contract. *Id.* at 121, 34 S.Ct. at 277.

In this case, RLA challenges whether the oral contract between Dowdey and the Baylies created a lien on the property before it was condemned. While RLA disputes that Dowdey ever had a lien on the real property, it did not dispute the factual underpinnings of the parties' contract which gave rise to the legal conclusion that Dowdey had such a lien. The undisputed facts are that the Baylies hired Dowdey upon an oral contract to preserve the subject property from foreclosure until it could be condemned; that Dowdey was successful in doing so; and that Dowdey was to be paid from the equity recovered or preserved in the property. *See* note 1 *supra.* The Baylies' equity in the property was preserved by Dowdey by his filing of an action in April 1972 in the Superior Court of the District of Columbia, thereby forestalling foreclosure until RLA took the property by condemnation, thus avoiding foreclosure permanently. Appellant had performed fully under the contract, and all that remained to be done was for payment to be made from the equity preserved in the property.

■ The record evidence of the parties' agreement is sufficiently clear to support the finding of an equitable lien on the Baylies' property under these facts and the principles distilled from the cases discussed above. *See also Wardman v. Leopold,* 66 App.D.C. 111, 115, 85 F.2d 277, 281, *cert. denied,* 299 U.S. 570, 57 S.Ct. 33, 81 L.Ed. 420 (1936). Once condemnation actually occurred, the attorney's lien attached no later than the time when the property was condemned, and the lien created relates back to the commencement of the action by the attorney which preserved the property

for its owners until condemnation. *Barnes, supra,* 232 U.S. at 121, 34 S.Ct. at 277; *see Continental Casualty, supra,* 70 App.D.C. at 322, 106 F.2d at 843. Therefore, the trial court properly concluded that Dowdey acquired an equitable lien on the property which transferred to the fund deposited into the court by RLA. *See* D.C.Code § 16–1366 (money deposited into the court's registry by the condemnor stands in lieu of the property condemned).

### IV.

■ A review of some of the statutory provisions and rules under which RLA acquired the property is helpful to an understanding of appellant's second argument, *i.e.,* that Dowdey had no enforceable lien because he filed suit against his former clients for the fee after RLA acquired title. RLA exercised its authority to condemn the property by eminent domain for redevelopment on behalf of the United States. D.C.Code § 16–1352. When RLA filed its complaint and declaration of taking and paid the estimated compensation specified in the declaration into the court registry, title to the property in fee simple vested absolutely in the government, and the right to just compensation vested in the persons entitled thereto. *Id.* § 16–1353. The statute provides:

The money so paid into the registry of the court shall be deemed to be vested in the persons owning or interested in the property, according to their respective estates and interest, and the money shall take the place and stand in lieu of the property condemned. The court, upon the application of the plaintiff or any party in interest, may determine and direct who is entitled to receive payment of the money so paid into the registry, and, in its discretion, order a reference to the auditor of the court or a special master to ascertain the facts on which the determination and direction are to be made.

D.C.Code § 16–1366. Thereafter, upon application of the parties in interest, the court may order that the money deposited, or any part of it, be paid forthwith for or on account of the just compensation to be

awarded in the proceeding.[13] D.C.Code § 16–1354; Fed.R.Civ.P. 71A(j). "Payment into the registry of the court for the use of the parties entitled of the sum adjudged to be just compensation for the property to be condemned and taken, ... constitutes payment of the compensation." D.C.Code § 16–1366.

■ RLA argues that it was not put on notice of Dowdey's claim by the doctrine of *lis pendens*,[14] and that Dowdey never acquired a lien on the property which is enforceable against RLA because Dowdey filed his action against the Baylies to enforce the lien after RLA acquired title. We reject these arguments for several reasons. First, Dowdey's lien attached "the moment the fund was received ... as if made at that moment." *Barnes, supra,* 232 U.S. at 121, 34 S.Ct. at 278. Moreover, as the court stated in *Barnes:*

> [i]t is not necessary to consider whether the lien attached to what we have called the *res,* before the fund was received, as a covenant to set apart rents and profits creates a lien upon the land.... It is enough that it attached not later than that moment.

*Id.* at 122, 34 S.Ct. at 278. Here, Dowdey had an agreement for payment out of the equity of the property, and therefore a lien upon the land which attached by agreement prior to RLA's condemnation suit. Dowdey's lien in the property was "transferred to the fund which in equity is treated as the land." *Groh, supra,* 61 A. at 469.

■ Appellee does not challenge that title vested in the government and that all liens, including his attorney's lien, were extinguished when RLA filed the declaration of taking and deposited the funds into the Registry of the Court. See D.C.Code § 16–1353. However, Dowdey's rights were transferred to the fund deposited by RLA to the use of those entitled thereto not only by equitable principles, *see Groh, supra,* 61 A. at 469, but also by statute. D.C.Code § 16–1353 (1967). While the attorney's lien on the real property might not have been enforceable against a purchaser without notice prior to the purchasing,[15] the rights of lienholders about whom the condemnor learns prior to the hearing on compensation are protected. If it learns of a lienholder or claimant after the initial filing of the condemnation proceeding, the condemnor is obligated to join them as parties. RLA is required to join initially only those persons whose names it knows who have or claim an interest in the property. Rule 71A(c)(2). However, prior to any hearing on compensation, RLA is obligated to add as defendants "all persons having or claiming an interest in [the] property whose names can be ascertained by a reasonably diligent search of the records, considering the character and value of the property involved and the interests to be acquired, and those whose names have otherwise been learned." *Id.; Washington Metropolitan Area Transit Authority v. One Parcel of Land,* 169 U.S.App.D.C. 109, 112, 514 F.2d 1350, 1353 (1975). The right to just compensation vests in those entitled to it, and that right is not restricted to lienholders about whom the condemnor has notice on the date of filing the complaint. D.C.Code §§ 16–1353, –1366; *see Fulcher v. United States,* 632 F.2d 278, 281–82 (4th Cir.1980). Thus, the doctrine of *lis pendens* and the fact that Dowdey filed suit asserting his claim of a lien after RLA filed its complaint for condemnation, do not result in Dowdey's right to compensation for

---

**13.** Within the meaning of the Fifth Amendment, "just compensation" means the "full and perfect equivalent in money of the property value." *United States v. Miller,* 317 U.S. 369, 373, 63 S.Ct. 276, 279, 87 L.Ed. 336 (1943).

**14.** *Lis pendens* is a common law doctrine which has the effect of constructive notice. *First Md. Fin. Servs. Corp. v. District–Realty Title Ins. Corp.,* 548 A.2d 787, 791 (D.C.1988). Under the doctrine, " 'nothing relating to the subject matter of the suit could be changed while it was pending and one acquiring an interest in the

property involved therein from a party thereto took such interest subject to the parties' rights as finally determined[,] and was conclusively bound by the results of the litigation.' " *Id.* (quoting 8 THOMPSON ON REAL PROPERTY § 4308, at 331 (1963 Repl.)).

**15.** *Walker v. Brown, supra,* 165 U.S. at 664, 17 S.Ct. at 457 (lien on real or personal property created by agreement enforceable against third parties who take with notice of the agreement).

the lien acquired prior to that date being cut off.

RLA actually learned of Dowdey's claimed interest in the property on or about January 29, 1973, well prior to the release of the proceeds of condemnation. "[I]t is not necessary that a person actually own an interest in the parcel to be properly joined as a defendant in a condemnation action. A person is properly joined if he claims such an interest." *United States v. 88.28 Acres of Land*, 608 F.2d 708, 712 (7th Cir.1979). Once RLA learned of Dowdey's claim of an interest in the property, it was obligated to join him as a party to the proceeding relating to that property. "There can be no just compensation, as the Constitution requires, if the fund is dispersed [sic] to the wrong persons." *Id.* at 714. Therefore, "no distribution [of the fund] should be ordered unless and until all persons made defendants by the petition or shown by testimony in the case to be interested in the fund, have been duly notified and are actually or constructively present before the court." *United States v. Certain Parcels of Land*, 40 F.Supp. 436, 442–43 (D.Md.1941).

■ Here, Dowdey claimed a lien by filing suit the same day as RLA filed the condemnation complaint. Although on actual notice of that interest, RLA failed to join Dowdey. It is irrelevant under the facts of this case that Dowdey filed his suit to enforce his lien against the Baylies subsequent to the time that RLA filed the condemnation suit and deposited the funds into the Registry of the Court. Under Rule 71A(c)(2), RLA was required to join all those known to claim an interest up to the time of the compensation hearing, which occurred in 1974. RLA's failure to join Dowdey deprived him of his rights to be paid for his attorney's lien.[16] The consequences of a condemnor's failure to join a known interested party can result in double payment. *United States v. 88.28 Acres of Land, supra*, 608 F.2d at 716. Barring some other viable bar to the claim, Dowdey is entitled to recover from RLA.

V.

Appellant argues that issue preclusion or collateral estoppel principles bar Dowdey's claim that he had a lien on the property. Appellant's argument is based upon the *Minnesota Title* litigation. In that case, Dowdey sued Minnesota Title on the theory that Minnesota Title's agent, Shenandoah, disbursed the proceeds from the condemnation suit without honoring his lien. The U.S. District Court found that Dowdey had failed to establish that Shenandoah was authorized by Minnesota to disburse the proceeds of condemnation from the 14th Street property. It found that Shenandoah was a policy writing agent for Minnesota and that Shenandoah was authorized only to solicit title insurance business, countersign policies, and collect premiums. The district court also found that Shenandoah's vice-president, Frank Marsalek, a private attorney who handled closings and settle-

---

**16.** We also reject appellant's argument that Dowdey waived any objection to RLA's failure to join him in the condemnation proceeding because Dowdey's attorney was present at the valuation hearing in March 1974, a year after the funds had been disbursed, and informed the court that he was an observer and had no real interest in it. The attorney also told the court he was there for Dowdey as trustee of another property. We cannot glean from the record whether the attorney was authorized to represent Dowdey with respect to the property involved in this appeal. Appellant has not provided a sufficient transcript for a determination of whether the attorney's comments could or did waive Dowdey's rights. *See Cobb v. Standard Drug*, 453 A.2d 110, 111 (D.C.1982) (appellant has a duty to present a record sufficient to show error occurred). Appellant does not argue before us any other theory of waiver by Dowdey. Appellant does argue that Dowdey had knowledge of the existence of the condemnation action, apparently suggesting that Dowdey should have intervened in the action despite not having been served. The Federal Rule itself, however, requires that the government shall add as defendants all persons known to claim an interest in the property "prior to any hearing involving the compensation to be paid." There is no record evidence, however, that Dowdey knew of the petition to release the funds nor of the order of the trial court of March 29, 1973 prior to the disbursal of the funds. Moreover, RLA has already conceded that it should have joined Dowdey in the action relating to the 1711–14th Street property. *See supra* note 6. We perceive no basis to overturn the trial court's rejection of appellant's estoppel defenses against appellee.

ment on real estate transactions, acted in that capacity on behalf of the Baylies, from whom he received compensation, and that he did not act as agent for Minnesota Title. Accordingly, the court found that Dowdey was not entitled to recover the amount claimed for the lien from Minnesota. Appellant also contends that Minnesota Title defended in the trial court and on appeal on the ground that Dowdey had no lien on the property. According to appellant, the United States Court of Appeals rejected Dowdey's lien theory when affirming the decision. Therefore, RLA argues that Dowdey cannot relitigate that question because of issue preclusion principles.

■ Collateral estoppel may bar relitigation of an issue of fact or law actually litigated and determined by a valid and final judgment in another proceeding, whether on the same or a different claim. *Ali Baba Co., Inc. v. WILCO, Inc.*, 482 A.2d 418, 421 (D.C.1984) (citing RESTATEMENT (SECOND) OF JUDGMENTS § 27); *Jackson v. District of Columbia*, 412 A.2d 948, 952 (D.C.1980). A question is actually litigated when properly raised by the pleadings and submitted and decided by the court. *Ali Baba*, 482 A.2d at 422.

■ A review of the ruling in the *Minnesota Title* case in context shows that the question of whether Dowdey had a lien on the equity in the property, as distinguished from the proceeds of condemnation, was not actually litigated in the *Minnesota Title* case.[17] To the extent it was addressed at all, it was only to resolve that Dowdey's attorney's lien attached to the proceeds of the condemnation funds. Although not essential to the court's ruling, in *Minnesota Title* the trial court purported to paraphrase the ruling in the prior action between Dowdey and the Baylies. In doing so, the court stated that the prior court (J. Gasch) had not viewed "Dowdey's claim as a charge or an encumbrance against the 14th Street property. Rather, [the court] found that a lien attached to the [Baylies'] share of the proceeds in accor-

dance with the parties' agreement and therefore rendered a money judgment against Baylies and his wife." We do not read the decision in *Minnesota Title* as altering the decision rendered by the court in *Dowdey v. Baylies*. In the latter case, the court clearly found that Dowdey had a lien on the Baylies' equity which necessarily transferred to the fund when all liens were extinguished by condemnation. *See* D.C.Code § 16–1366 (1967). Neither the opinion in the *Minnesota Title* litigation nor the per curiam opinion affirming it resolved again the question of how Dowdey's lien on the proceeds arose, and resolution of the issue was not necessary to decide the case. Therefore, appellant's argument that the decision in *Minnesota Title* collaterally estopped Dowdey from litigating his claim against RLA in this case must fail.

■ Appellant also argues that Dowdey's claim against RLA is barred by res judicata because Dowdey has already lost a claim against RLA's title insurer. Under the doctrine of res judicata, the same parties are barred from relitigating the same claim in a later law suit. *Gilles v. Ware*, 615 A.2d 533, 538 (D.C.1992); *Washington Medical Center, Inc. v. Holle*, 573 A.2d 1269, 1280–81 (D.C.1990). The doctrine also applies to those in privity with parties to the prior suit. *Usher v. 1015 N Street, N.W. Coop. Ass'n*, 120 A.2d 921, 922–23 (D.C.1956). Privity has been defined in this context in the following manner:

> The term privity denotes a mutual or successive relationship to the same rights of property. Agents and principals do not, as such, have any mutual or successive relationship to rights of property and therefore are not ordinarily in privity with each other. Further, no party is, as a general rule, bound in a subsequent proceeding by a judgment unless the adverse party now seeking to secure the benefit of the former adjudication would be prejudiced by it if it were to be determined the other way.

---

**17.** In *Dowdey v. Baylies*, the district court found as fact that Dowdey was entitled to an attorney's lien against the equity in the Baylies' real property and found as a matter of law that in lieu of same, Dowdey was entitled to a lien on the sum on deposit in the court registry.

*Id.* at 922. Application of the doctrine depends upon the circumstances involved; therefore, the issue must be determined in light of the circumstances in each case. *See id.* at 923. Where privity exists and the issue to be tried is identical as against both principal and agent, the doctrine of res judicata applies to bar subsequent litigation. *Id.* at 923.

██ In this case, Minnesota Title was RLA's title insurer for purposes of insuring title to the property. There was no mutual or· successive relationship to the same rights of property between Minnesota Title and RLA. Rather, the company acted as title insurer only, taking no part in disbursing the funds. On the particular facts of this case, we do not find that the requisite circumstances exist to conclude that privity existed. Therefore, res judicata does not apply. Moreover, as noted previously, the *Minnesota Title* litigation did not dispose of the question of whether Dowdey had an attorney's lien in the equity of the Baylies' real property.

## VI.

██ Dowdey also challenges the trial court's judgment limiting the award of interest to a six percent statutory rate. The trial court relied on D.C.Code § 16–1353(b) (1989) which provides: "the judgment shall include, as part of the just compensation awarded, interest at the rate of 6 per centum per annum on the amount finally awarded as the value of the property as of the date of taking, from that date to the date of payment." While the statute appears to set a maximum limit on interest as an element of compensation, such a provision has been interpreted as a floor for sound reasons. ·Where the government takes property by eminent domain, it is required to pay just compensation under the Fifth Amendment. *United States v. 125.2 Acres of Land,* 732 F.2d 239, 244 (1st Cir.1984); *Miller v. United States,* 223 Ct. Cl. 352, 620 F.2d 812, 837 (1980). Even absent a statute, the right to interest attaches automatically to the right of an award of damages arising out of condemnation. *Miller,* 620 F.2d at 837. The stat-

utory rate may be used if the court determines that it is reasonable and fair. *Id.* Thus, where statutes set a rate of interest as just compensation for condemnation awards, courts have interpreted it to be a floor. *Washington Metropolitan Area Transit Authority v. One Parcel of Land,* 706 F.2d 1312, 1323 (4th Cir.), *cert. denied,* 464 U.S. 893, 104 S.Ct. 238, 78 L.Ed.2d 229 (1983); *United States v. 125.2 Acres of Land, supra,* 732 F.2d at 245 (citing *United States v. Blankinship,* 543 F.2d 1272 (9th Cir.1976)); *United States v. 319.46 Acres of Land,* 508 F.Supp. 288 (W.D.Okla.1981). In keeping with the constitutional requirement of just compensation, it is the only reasonable approach.

██ Apparently viewing itself to be bound by the amount specified in the statute, the trial court rejected appellee's request for interest at higher rates. A determination of the proper rate of interest is a question of fact and its ultimate determination requires an exercise of discretion. *Miller, supra,* 620 F.2d at 837. Since the trial court deemed itself to be restricted to a six percent rate in making the award, we must reverse that aspect of its ruling for consideration in light of this opinion.

## VII.

██ Finally, Dowdey contends that he is entitled to recover attorney's fees under the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970. 42 U.S.C. §§ 4601–4655 (1983). He argues that the act provides reasonable attorney's fees in inverse condemnation cases. *See id.* § 4654(c). It has been recognized that "recovery of litigation expenses under the Uniform Relocation Act is appropriate only in *inverse* condemnation cases and is not appropriate in condemnation cases or in cases where property is legislatively taken." *Miller, supra,* 620 F.2d at 840 n. 29 (emphasis in original). Inverse condemnation is the description of a proceeding where " 'a landowner recovers just compensation for a taking of his property when condemnation proceedings have not been instituted.' " *Agins v. Tiburon,* 447 U.S. 255, 258, 100 S.Ct. 2138, 2140,

65 L.Ed.2d 106 (1980) (quoting *United States v. Clarke*, 445 U.S. 253, 257, 100 S.Ct. 1127, 1130, 63 L.Ed.2d 373 (1980)). Given this definition, it appears that it is not. The government acquired the property by a condemnation proceeding, but it failed to secure payment to Dowdey by joining him in the original action. In proceeding by condemnation, title vested indefeasibly in the United States pursuant to statute. D.C.Code § 16–1353. When the government acquires title without payment of just compensation, the remedy is an award for same and discharge of the equitable lien. *Fulcher, supra*, 632 F.2d at 278, 284–85. Therefore, we do not regard this proceeding as strictly one of inverse condemnation. Accordingly, the trial court properly concluded that appellant was not entitled to attorney's fees since there was no statutory basis for same.

For the foregoing reasons, we affirm the decision of the trial court except with respect to the interest question. We remand for consideration of the amount of interest which would constitute compensation consistent with the law as set forth in this opinion.

*Affirmed in part, reversed in part, and remanded.*