Berhanu **MOLLA**, Appellant,

v.

Donna **SANDERS**, Appellee.

No. 07–CV–294.

District of Columbia Court of Appeals.

Argued June 27, 2008.

Decided Sept. 17, 2009.

Timothy P. Cole, Montague, TX, for appellant.

Hughie D. Hunt, College Park, MD, for appellee.

Before RUIZ, GLICKMAN, and THOMPSON, Associate Judges.

RUIZ, Associate Judge:

This is the second case in a series of actions appellant (landlord) has brought against appellee (tenant) in an effort to gain possession of the property that appellant purchased at a foreclosure sale. We reverse and remand for further proceedings because the trial court granted summary judgment under the misapprehension that the decision in the first case was dispositive of the issues raised in the action that gives rise to this appeal.

## I.

In the first action, appellant sued appellee and the prior owner of the property, Sinclair Skinner, under a theory of "wrongful detainer." *See Molla v. Skinner*, No. 04–LTB–19104. In that case, Judge Melvin R. Wright ruled in favor of appellee, concluding that she had the right to continue occupying the premises pursuant to an existing lease between her and Skinner, despite the subsequent conveyance of the property to appellant. Judge Wright found that "the evidence establishes [appellee's] legal right to occupy the property pursuant to the terms agreed to by [appellee] and the prior owner...."[1] Appellant did not appeal from the judgment in favor of appellee's continued tenancy.

About six months after this ruling, on June 16, 2006, appellant gave notice to appellee that he was increasing her rent from $450 (the amount due under the lease with Skinner), to $1,600. On August 17, 2006, appellant gave appellee "notice to cure or quit," telling her that "you have been violating the obligation of your tenancy.... Please be advised that your monthly rent is One Thousand Six Hun-

---

1. Judge Wright's order also stated, "The lease agreement calls for rent to be paid at the rate of $450 per month with no utilities payments required by [appellee]. The lease runs from June 2002 through June 2007."

dred ... Dollars.... Your violation consists of not paying your August rent."

Appellant then filed the underlying action, this time for possession for nonpayment of rent.[2] Both parties moved for summary judgment. Appellant prayed for judgment for possession and a money judgment for unpaid rent in the amount of $1,600 per month from August 2006 through February 2007. Appellee opposed, and in her motion for summary judgment, claimed that appellant's action was barred by *res judicata* or collateral estoppel because the (unappealed) order that Judge Wright had issued validated the existing lease including, by implication, the amount of monthly rent due ($450).

The court, Judge Motley, concluded that appellant's claims were barred because Judge Wright had already ruled on the matter:

> [Judge Wright] decided that the lease was in effect. You want me to change his ruling. That's what you want me to do.... You might have said he was wrong. You might want to appeal it or have him change his mind. But I cannot change what I think he did.... My

ruling is based on the fact that Judge Wright has decided this issue.

Judge Motley rejected appellant's argument that the continuing enforceability of the lease terms—as opposed to the existence of a tenancy that survived transfer of the property—was not a necessary finding in Judge Wright's ruling.[3] He therefore granted partial summary judgment to appellee on the question of the monthly rent due.[4]

## II.

We review the grant of summary judgment de novo. *See, e.g., Osei–Kuffnor v. Argana*, 618 A.2d 712 (D.C.1993). We must affirm the judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Super. Ct. Civ. R. 56(c). "In reviewing a grant of summary judgment, it is our function to determine whether, viewing the evidence in a light most favorable to the party opposing the motion ... that evidence gives rise to a genuine factual dispute. If

---

2. Both counsel advised the court during oral argument that there are related cases, one in Superior Court concerning the renewal of the lease, and another before the Rental Housing Commission challenging the rent increase under the rent control law.

3. Judge Motley explained:
   That's what, because if I upset his ruling as you suggest, not recognizing the contract because you said he didn't recognize the contract and it wasn't necessarily [sic] for his ruling, that's not true. By its own terms, it's necessary for his ruling. .... You said that's just dicta; he's just talking there. He's not talking there. That's not something unnecessary for the holding. That is his holding. I cannot say it's dicta. I can't say it. It's not dicta.

4. Although the trial court granted partial summary judgment to appellee on the con-

tinuing applicability of the lease terms, it ultimately ruled for appellant in granting judgment for possession because appellee had failed to pay the rent called for in the lease. The court found that $421.33 was due to appellant under the lease and ordered a money judgment in that amount. According to representations by both parties at oral argument, appellee subsequently satisfied the money judgment and the court stayed execution of the judgment for possession. *See Trans–Lux Radio City Corp. v. Serv. Parking Corp.*, 54 A.2d 144, 146 (D.C.1947) ("[A] court of law or equity may relieve a tenant from forfeiture of his lease for nonpayment of rent by permitting him before or after judgment, so long as he is in possession, i.e., before 'execution is executed,' to pay the rent due, with interest and costs.").

so, summary judgment must be reversed, and trial held on the disputed issues." *Leichtman v. Koons,* 527 A.2d 745, 746–47 (D.C.1987).

■ We agree with appellant that Judge Wright's ruling in the prior action is not dispositive of the issues relevant to the action for possession that was before Judge Motley. While there is no statutory action for "wrongful detainer" in the District of Columbia, *cf. Legacy Funding LLC v. Cohn,* 396 Md. 511, 914 A.2d 760, 766 (2007) ("Although there is little guidance in the caselaw regarding the elements of a non-statutory wrongful detainer action, we think it is at least implicit that, to establish the basis of such a claim ... the claimant must show that (1) it was lawfully entitled to possession, (2) it demanded possession following its entitlement to do so, and (3) the possession was wrongfully denied."), we recognize that the action filed by appellant in the first litigation was effectively one for ejectment, pursuant to D.C.Code § 16–1103. To prove a case for ejectment, "it is sufficient to entitle the plaintiff to relief to show that he is entitled, as against the defendant, to the immediate possession of the premises claimed, and that the defendant is: (1) in possession of the premises, and is holding adversely to plaintiff...." *Id.* § 16–1104(a) (2001). As appellee's claim of right is that of tenancy with the prior owner—and since she was in actual possession of the property—the lease was relevant to whether appellant was entitled to immediate possession because appellee was adversely in possession, instead of a lawful occupant. *See* D.C.Code § 16–1103 (2001) (referring to proof that defendant in an ejectment action is "wrongfully in possession" or "wrongfully exercising acts of ownership"). Thus, Judge Wright's ruling in favor of appellee, recognizing that she had a valid lease with Skinner, was necessary to the holding that appellant had failed to prove his case for ejectment, because appellee was not holding the property adversely but pursuant to a claim of right.[5] Judge Wright did not, however, need to decide in order to dismiss the complaint for ejectment that the lease terms would continue to be effective regardless of the conveyance of the property, a conclusion that, as we now explain, would have been clearly contrary to law. *See, e.g., Cook v. United States,* 828 A.2d 194, 196 n. 2 (D.C.2003) (in the context of bench trial, trial judges are presumed to know the law and apply it properly).

■ When title to real property conveys by deed, any unrecorded instrument concerning the property is ineffective against a subsequent bona-fide purchaser. *See* D.C.Code § 42–401 (2001). Thus, we have held, a *bona-fide purchaser*[6] is not bound by an unrecorded lease on the property.

---

5. Appellee's counsel stated during oral argument that it was the landlord who had asked the court to admit the lease into evidence in the first lawsuit. According to counsel, appellant had sought to prove that the lease was fraudulent, which would have undermined appellee's claim that she had a lawful claim to possess the property pursuant to a valid lease.

   The lease appears to be a standard rental contract, executed by appellee and the prior owner, on June 23, 2002. Judge Motley wondered whether the term of the lease—five years with an option to renew for another five years—was "unusual." When asked by Judge Motley whether there had been collusion between appellee and the prior owner by entering into such a lease just before appellant bought the property, appellant's counsel replied that he had "no evidence of it." By finding in favor of appellee, Judge Motley rejected the challenge to the authenticity and bona fides of the lease.

6. A bona-fide purchaser is one without "actual, constructive or inquiry" notice of the unrecorded instrument. *Clay,* 604 A.2d at 895.

*See Clay Props., Inc. v. Washington Post Co.*, 604 A.2d 890, 894 (D.C.1992) (en banc) (unrecorded lease ineffective against a bona-fide purchaser who acquired the property in a foreclosure sale) (citing former codification, D.C.Code § 45–801 (1990 Supp.)). But the law affords protection to tenants who had enjoyed possession of the property pursuant to a valid lease with a prior owner, although they may no longer have a lawful claim to continue to be in possession pursuant to a lease the law will not enforce. Such tenants do not lose their tenancy, but usually stand as tenants-at-will in relation to the new owner:

> An estate at will is one held by the joint will of lessor and lessee, and which may be terminated at any time, as herein elsewhere provided, by either party; and such estate shall not exist or be created except by express contract; provided, however, that *in case of a sale of real estate under mortgage or deed of trust or execution, and a conveyance thereof to the purchaser, the grantor in such mortgage or deed of trust, execution defendant, or those in possession claiming under him, shall be held and construed to be tenants at will, except in the case of a tenant holding under an unexpired lease for years, in writing, antedating the mortgage or deed of trust.*

D.C.Code § 42–522 (2001) (emphasis added); *cf. Simpson v. Jack Spicer Real Estate, Inc.*, 396 A.2d 212, 213–14 (D.C. 1978) (per curiam) (noting that a former owner who continues to occupy the house after foreclosure is a holdover tenant, "one who holds or possesses lands by any kind of right or title . . . and [not] . . . one who stands in a contractual relationship with his landlord."); *Surratt v. Real Estate Exchange*, 76 A.2d 587, 587 (D.C.1950) (noting that under the 1940 codification of the statute, "when the deed of trust was foreclosed, [former owners] automatically be-

came 'tenants at will' of . . . the purchaser. . . .").

To determine that appellee continued to have a right to possess the property after it conveyed to appellant, Judge Wright had to have found that appellee had a valid tenancy with the prior owner that allowed appellee to continue as a tenant pursuant to D.C.Code § 42–522. This was the basis for Judge Wright's dismissal of appellant's claim for ejectment, grounded on appellee's alleged unlawful adverse possession of the property. Judge Wright's ruling signified that appellant could not evict appellee through an action for ejectment, but must follow the eviction procedure set forth in the Rental Housing Act, D.C.Code § 42–3505.01 (2009 Supp.). *See Adm'r of Veterans Affairs v. Valentine*, 490 A.2d 1165, 1170 (D.C.1985) (per curiam) (holding that the Rental Housing Act, then codified in relevant part at D.C.Code § 45–1561 (1981), continues to apply to tenants who remain after conveyance by foreclosure because there is no "reason why a party who has come into ownership as a result of a mortgage default has any different relationship with previous tenants than do other owners."); *see also Merriweather v. District of Columbia Bldg. Corp.*, 494 A.2d 1276, 1279 (D.C.1985) (applying *Valentine*, "since appellants are tenants of property, treated before and subsequent to the foreclosure as rental property, they are entitled to all the eviction protections . . . of the Rental Housing Regulations").

■ Armed with Judge Wright's finding that appellee was his tenant, appellant tried again to achieve his objective of gaining possession of the property by filing an action under the Rental Housing Act. When appellant brought suit to evict appellee for non-payment of the increased rent he claimed was due, the trial court did not make findings on the issue relevant to the action for non-payment of rent, i.e., the

rent due, because the court was persuaded that the amount of the applicable rent had already been decided by Judge Wright in the previous action for ejectment. But, as we explain, Judge Wright did not have to find that appellant was bound by all the *terms* of the lease between appellee and the previous owner. Rather, all Judge Wright needed to do—and did do—was to recognize the validity of that lease to the extent it permitted appellee to resist ejectment and continue her tenancy with the new owner, albeit one on an at-will basis, as provided in D.C.Code § 42–522.[7] Res judicata bars relitigation of the same claim between the same parties, *see, e.g., Carr v. Rose,* 701 A.2d 1065, 1070 (D.C.1997), but an action for ejectment is not the same as a complaint for possession under the Rental Housing Act.[8] Nor does collateral estoppel (or issue preclusion) apply to bar litigation in this case of the amount of rent due to appellant because a determination of the rent obligation was not "essential" to the first judgment. *Pipher v. Odell,* 672 A.2d 1092, 1095 (D.C.1996) (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 27 (1982)) (additional citation omitted).[9]

For the foregoing reasons, we conclude that the trial court erred in relying upon the ruling in the prior action for ejectment (where the only dispositive issue was whether there was a tenancy that survived transfer of the property) as having decided whether appellant was entitled to relief in this case—an action for eviction for nonpayment of rent. The relevant issues in this case are different, and include determining what kind of tenancy appellee has under D.C.Code § 42–522, see note 7, *supra,* and whether any defenses apply to the increased rent that appellee claims is due.[10] Inasmuch as the judgment of the trial court was based on a legal misapprehension that appellant's lawsuit was precluded by the decision in a prior action, it must be reversed, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*

---

**7.** We note that under the statute, the tenancy becomes "at will, except in the case of a tenant holding under an expired lease for years, in writing, antedating the mortgage or deed of trust." D.C.Code § 42–522 (2001). As noted, appellant's 2002 lease was for a term of five years, renewable for another five years, see note 5, *supra,* but the renewal term apparently is in dispute. See note 2, *supra.*

**8.** Res judicata also bars claims that could have been brought with the previous claim. *See Carr,* 701 A.2d at 1070. Before Judge Wright's ruling declaring that appellee had a valid lease with the prior owner, and consequently, a continuing tenancy, the current action for eviction under the Rental Housing Act would not have been appropriate.

**9.** As noted, in the ejectment action, appellant had contested the existence of a valid lease, not any specific term of the lease. See note 5, *supra.*

**10.** Appellee raised two points in opposition to appellant's "Statement of Undisputed Facts":

1. Defendant disputes that the market rate of rent would be 1600.00 per month.
2. Defendant disputes whether Plaintiff is exempt from the rent control act.