Dissenting opinion by Associate Judge Thompson, at page 577.
 

 Blackburne-Rigsby, Chief Judge:
 

 Appellant Candi Peterson appeals the trial court's dismissal of her breach of contract claim against her former employer, appellee the Washington Teachers Union ("WTU") pursuant to Super. Ct. Civ. R. 12 (b)(6). Because we find that res judicata
 
 [1]
 
 bars appellant's claim, we affirm the trial court's dismissal.
 

 I.
 

 The Washington Teachers Union ("WTU") is a labor organization that acts as the exclusive bargaining agent for all personnel, except supervisors, of the District of Columbia Public Schools ("DCPS"). In December 2010, appellant was elected General Vice President of the WTU; she took a paid leave of absence from her DCPS position as a social worker/classroom teacher to assume this position.
 

 In December 2010, WTU's newly-elected President, Nathan Saunders, drafted a compensation agreement for appellant, and an identical contract for himself. Appellant's contract provided for a salary of $151,000
 
 [2]
 
 and included several important provisions, most notably:
 

 8. Any disputes concerning compensation shall be arbitrable using the American Arbitration Association.
 

 9. WTU will promptly pay all expenses associated with the arbitration including legal representation by both parties.
 

 10. Any provision included herein deemed illegal shall be unenforceable. All other provisions shall remain in full affect.
 

 11. Any dispute shall be considered resolved in its entirety by payment of the disputed amount.
 

 12. Non-payment of compensation will accrue as a WTU liability and is not waived. Non-payment of compensation shall create a priority wage lien due in full at the end of [appellant's] term.
 

 On July 26, 2011, Saunders suspended the WTU's portion of appellant's compensation agreement ($51,000) after both parties engaged in a heated argument in front of field representatives over who was in charge of a matter involving teachers who had been discharged.
 
 [3]
 
 After this disagreement, Saunders issued a letter informing appellant that she had been removed from office and her pay terminated until she met with him to rectify the situation. In response, appellant contacted
 
 The Examiner
 
 , which published a story alleging that Saunders was pushing appellant out and had verbally abused her. Saunders, believing these comments to be derogatory, sent
 appellant a letter demanding that she meet with him. At the subsequent meeting, Saunders gave appellant a non-negotiable settlement agreement which demanded that appellant admit inappropriate conduct; that she submit a written letter of apology; that she agree to a financial penalty; and that she refrain from contacting the press about the matter. The letter also stated that appellant's pay, which had been withheld, would not be returned unless appellant agreed to these demands. Appellant refused to sign the agreement, and in response, Saunders drafted a disciplinary resolution.
 

 On August 4, 2011, Saunders scheduled a meeting to be held that evening to address the disciplinary resolution; appellant was not provided any notice of this meeting or its resolution, but learned about it indirectly. At the August 4th meeting, the Executive Board adopted Saunders's resolution, suspending appellant's supervisory authority over field representatives for a period of six months and terminating the additional compensation appellant received from WTU ($51,000) above the DCPS amount ($100,000). On September 6, 2011, Saunders informed DCPS that he had rescinded appellant's leave of absence to serve as the WTU General Vice President; appellant was instructed to return to the classroom as a social worker/classroom teacher.
 

 On December 2, 2011, appellant filed a demand for arbitration, asking for lost wages and to be reinstated in her position as WTU's General Vice President with all powers and compensation restored; she claimed that the WTU's action violated the WTU's Constitution and By-Laws and the District of Columbia's Comprehensive Merit Personnel Act ("CMPA"),
 
 D.C. Code § 1-617.03
 
 (a)(1) (2012 Repl.).
 

 On March 5, 2012, Arbitrator Stanley Mazaroff ("Arbitrator") issued a decision addressing jurisdiction and the arbitrability of appellant's claims. The Arbitrator noted that the compensation agreement expressly stated that, "[a]ny disputes concerning compensation shall be arbitrable using the American Arbitration Association," and that his jurisdiction was specifically limited to "disputes concerning compensation." Accordingly, appellant's claim for relief seeking reinstatement was outside the permissible scope of arbitration.
 

 At a status hearing before the Arbitrator on March 14, 2012, appellant redefined her claim, alleging that the WTU breached her compensation contract. On August 24 and 30, 2012, the parties appeared for an evidentiary hearing on the merits of appellant's claim. On September 24, 2012, the Arbitrator issued his decision, concluding that appellant and the WTU "entered into a legally enforceable agreement pertaining to [appellant's] compensation and her right 'to arbitrate any disputes concerning compensation.' "
 

 Ultimately, the Arbitrator found that Saunders and the WTU Executive Board did not have the authority to suspend appellant's compensation under her contract. Similarly, removal under the WTU's Constitution and By-Laws mandated a recall petition, which was never filed, and a vote by the WTU's membership. On the breach of contract claim, the Arbitrator awarded appellant $71,065.82, the amount she had been denied in compensation and benefits from the date of her removal to the date of the arbitration hearing. The Arbitrator's September 24, 2012, award noted that "[t]his award resolves all claims and counterclaims submitted by [appellant] and the WTU to arbitration except for [appellant's] pending claim for attorney's fees and costs. All such claims ... not expressly granted herein are hereby denied." The Arbitrator's award also noted that appellant's claim that the WTU violated her rights under the CMPA involved statutory issues,
 and thus, fell outside the scope of the arbitration provision. Accordingly, the CMPA claim was dismissed without prejudice. On December 6, 2012, the Arbitrator also awarded appellant $51,739 in attorney fees, and $1,937.25 in costs. Appellant subsequently sought to have her arbitration award confirmed.
 
 [4]
 
 On October 10, 2013, Judge John M. Mott confirmed the arbitration award.
 

 On December 14, 2015, appellant filed a complaint for breach of contract, seeking compensation to cover the period between August 24, 2012 (the date of the arbitration trial) and July 31, 2013 (the date appellant's term expired). WTU responded by filing a motion to dismiss, claiming that appellant was seeking additional damages that she could have sought in arbitration but that she did not do so, and that her complaint was barred by res judicata. On February 4, 2016, the trial court issued an order granting WTU's motion, finding that appellant's claim was barred under res judicata. On February 11, 2016, the trial court denied appellant's motion for reconsideration. On February 12, 2016, appellant filed the instant appeal, arguing that res judicata does not bar her claim.
 

 II.
 

 We review
 
 de novo
 
 an order granting a motion to dismiss a complaint pursuant to Super. Ct. Civ. R. 12 (b)(6).
 
 Solers, Inc. v. Doe
 
 ,
 
 977 A.2d 941
 
 , 947 (D.C. 2009). We accept all factual allegations in the complaint as true, and "construe all facts and inferences in favor of the plaintiff."
 

 Id.
 

 (internal quotation marks omitted).
 

 To determine whether res judicata bars a subsequent action, we examine
 

 (1) whether the claim was adjudicated finally in the first action; (2) whether the present claim is the same as the claim which was raised or which might have been raised in the prior proceeding; and (3) whether the party against whom the plea is asserted was a party or in privity with a party in the prior case.
 

 Calomiris v. Calomiris
 
 ,
 
 3 A.3d 1186
 
 , 1190 (D.C. 2012).
 

 In this case, the compensation claim stemming from the employer's breach of contract was adjudicated finally in the first action-appellant confirmed the Arbitrator's award in a Superior Court proceeding before Judge Mott, which has a preclusive effect on future litigation stemming from the same claim and involving the same parties.
 
 See
 

 Apparel Art Int'l, Inc. v. Amertex Enter. Ltd
 
 .,
 
 48 F.3d 576
 
 , 585 (1st Cir. 1995) ("An arbitration award generally has res judicata effect as to all claims heard by the arbitrators."). As "a final judgment on the merits embodies all of a party's rights arising out of the transaction involved," appellant cannot relitigate the breach of contract claim previously adjudicated by the Arbitrator.
 
 Faulkner v. Gov't Emps. Ins. Co
 
 .,
 
 618 A.2d 181
 
 , 183 (D.C. 1992) (internal quotation marks omitted).
 

 Second, appellant could have raised her present claim, related to unpaid compensation, before the Arbitrator.
 
 See
 

 id.
 

 at 183
 
 (stating that res judicata "precludes relitigation ... of all issues arising out of the same cause of action between the same parties or their privies, whether or not the issues were raised in the first trial"). In determining if two cases stem from the same cause of action, we "have considered the nature of the two actions and the facts sought to be proved in each one."
 
 Amos v. Shelton
 
 ,
 
 497 A.2d 1082
 
 , 1085 (D.C. 1985). In appellant's opposition to the motion to
 dismiss, she stated that the arbitration focused on the issues of "whether the Compensation Agreement amounted to a legally binding contract ... and ... [whether] the WTU breach[ed] this agreement." The complaint before the trial court also sought damages based on this same breach of contract, and thus, "the essence of the second action was exactly the same as that of the first."
 

 Id.
 

 (internal brackets and quotation marks omitted).
 

 Appellant contends that the Arbitrator lacked the jurisdiction to award her front pay, and that he had no equitable powers. This contention is incorrect. Arbitration "is a matter of contract" and is "governed by normal principles of contract law."
 
 2200 M St. LLC v. Mackell
 
 ,
 
 940 A.2d 143
 
 , 150 (D.C. 2007) (internal quotation marks omitted). The parties' agreement constituted an explicit consent to arbitrate "any and all disputes relating to or concerning compensation ...." As the Arbitrator had jurisdiction over any and all issues related to compensation, a request for front pay would clearly fall within his purview, despite appellant's assertion that the parties "did not agree to arbitrate any issue involving prospective wages." Moreover, nothing prevented appellant from seeking both past and future damages in the arbitration proceeding, despite her contention that a claim for prospective damages would have been unripe at the time of arbitration.
 
 [5]
 

 Similarly, appellant contends that the Arbitrator did not have any equitable powers because he found that he did not have the jurisdiction to order the WTU to reinstate appellant as Vice President. The Arbitrator lacked this jurisdiction to order reinstatement, however, because the request for reinstatement was not an issue involving compensation. Moreover, there is nothing in the D.C. Uniform Arbitration Act that would have barred the Arbitrator from issuing an equitable remedy, so long as that remedy concerned compensation, and appellant had requested it.
 
 [6]
 

 Appellant also contends that ? 12 in her contract permitted the splitting of claims for any compensation that had not been previously sought from the Arbitrator, that such unpaid compensation accrued as a WTU liability and was not waived, and that non-payment would create a priority wage lien due in full at the end of her term.
 
 See
 

 Gilles v. Ware
 
 ,
 
 615 A.2d 533
 
 , 543 (D.C. 1992) (citation and internal quotation marks omitted) ("Under the Restatement, res judicata does not apply to extinguish a claim if [t]he parties have agreed in terms
 or in effect that the plaintiff may split his [or her] claim, or the defendant has acquiesced therein."). The language in appellant's contract does not constitute acquiescence to claim-splitting and the filing of multiple actions; rather, it contains language about the permissible timing of an action for unpaid compensation, allowing her to defer an action until the end of her term. Under the contract language, appellant could have waited until the end of her term to seek all compensation owed for WTU's breach of contract, which would have precluded WTU from asserting res judicata. Appellant, however, opted to pursue a claim in the middle of her term; in seeking a mid-term award, she obtained a final judgment addressing the rights and liabilities of both parties arising from WTU's contract breach.
 

 Finally, there is no dispute that the parties to the arbitration are the same parties to the present action, and thus, this issue merits no discussion.
 

 III.
 

 For the foregoing reasons, the judgment of the Superior Court is
 

 Affirmed.
 

 "Under the doctrine of res judicata or claim preclusion, a final judgment on the merits embodies all of a party's rights arising out of the transaction involved, and precludes relitigation in a subsequent proceeding of all issues arising out of the same cause of action between the same parties or their privies, whether or not the issues were raised in the first trial."
 
 Molovinsky v. Monterey Co-op., Inc.
 
 ,
 
 689 A.2d 531
 
 , 533 (D.C. 1996) (internal citation and quotation marks omitted).
 

 Appellant's salary was based on (1) her $100,000 salary that she earned as a classroom teacher, and (2) an additional amount of $51,000 for her services as General Vice President of the WTU.
 

 This disagreement followed an earlier dispute between Saunders and appellant pertaining to appellant's continuation of her blog.
 

 Pursuant to Super. Ct. Civ. R. 70-I (Confirming, Vacating, or Modifying Arbitration Award Under the Arbitration Amendments Act of 2007) and
 
 D.C. Code §§ 16-4405
 
 (2012 Repl.) (Application for Judicial Relief) and -4422 (Confirmation of Award).
 

 In
 
 Keller v. Marvins Credit, Inc
 
 ., an employee was terminated three years into his five-year contract.
 
 147 A.2d 872
 
 , 873 (D.C. 1959). The employee then filed a breach of contract complaint seeking compensation owed to him as of the date he filed suit.
 

 Id.
 

 He subsequently filed a second breach of contract suit seeking compensation owed to him for the time between the first and second complaint.
 

 Id.
 

 In the
 
 Keller
 
 holding, we stated that "[t]he general rule is that an employee who is discharged in violation of his contract of employment may sue only once and at that time recover all present and prospective damages."
 

 Id.
 

 (internal quotation marks omitted).
 
 See also
 

 District of Columbia v. Jones
 
 ,
 
 442 A.2d 512
 
 , 524 (D.C. 1982) ("The measure of damages in an employee's action against his employer for breach of the employment contract is generally the compensation that would have been due to the employee during the unexpired period of employment with appropriate reduction to present worth.") (internal quotation marks omitted).
 

 D.C. Code § 16-4421
 
 (c) (2012 Repl.) states that
 

 (c) ... an arbitrator may order such remedies as the arbitrator considers just and appropriate under the circumstances of the arbitration proceeding. The fact that such a remedy could not or would not be granted by the court is not a ground for refusing to confirm an award under § 16-4422 or for vacating an award under § 16-4423.