*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 23-CV-0024

KAREN RICHARDSON, APPELLANT,

v.

MCCABE, WEISBERG & CONWAY, LLC, *et al.*, APPELLEES.

Appeal from the Superior Court
of the District of Columbia
(2020-CA-000741-B)

(Hon. Yvonne Williams, Trial Judge)

(Submitted May 2, 2024                    Decided Sept. 26, 2024)

*Donald M. Temple* for appellant.

*Aaron D. Neal* for appellees.

Before EASTERLY, HOWARD, and SHANKER, *Associate Judges*.

EASTERLY, *Associate Judge*: Karen Richardson appeals from a Superior Court order dismissing on res judicata grounds her claims of fraudulent and/or intentional misrepresentation against McCabe, Weisberg & Conway, LLC ("MWC") and Trustees Laura H.G. O'Sullivan and Chasity Brown (the "Trustees"), negligent misrepresentation against MWC, and breach of fiduciary duty against the Trustees

for actions related to the judicial foreclosure of her home. For the following reasons, we are constrained to reverse the Superior Court's judgment on the limited issue of privity. We remand for further proceedings consistent with this opinion.

## I.     Background

In 2008, Ms. Richardson obtained a loan from Taylor, Bean & Whitaker Mortgage Corporation ("TBW") that she secured through a promissory note and a deed of trust to the home she owned at 808 I St., NE. The Federal Home Loan Mortgage Corporation ("Freddie Mac") later became the owner of the promissory note and, after a series of transfers, successors to TBW assigned Nationstar Mortgage, LLC ("Nationstar") to be the holder and servicer of the note. Nationstar then executed a deed of appointment to appoint several members of MWC, including Laura H.G. O'Sullivan and Chasity Brown, as Substitute Trustees of the deed of trust. Although the language in the deed of trust stated that the "Lender" had the power to appoint successor trustees, the deed of appointment stated that, under the deed of trust, the "holder" of the note could appoint substitute trustees who would have "all the rights, powers and authority" as the trustees who were originally named.

## A.  The Foreclosure Litigation

In September 2015, Nationstar filed a complaint for judicial foreclosure against Ms. Richardson, alleging that she had defaulted on her mortgage. Ms. Richardson responded by filing counterclaims against Nationstar, TBW, and another mortgage servicer, claiming that they had violated various federal and local fair lending and consumer protection laws. Ms. Richardson also contested whether Nationstar had been properly assigned as a holder of the note and whether it could, therefore, foreclose on her home. The Superior Court (Hon. Todd Edelman) concluded that Nationstar was a holder of the note and entitled to enforce it, granted summary judgment in favor of Nationstar, and ordered the judicial foreclosure of the property to be carried out by the Trustees. Ms. Richardson appealed the Superior Court's decision, and we ultimately dismissed the appeal as moot (because, in the absence of a stay, the property had already been sold, *see infra*).

On February 26, 2019, after a year and a half of delay during which Ms. Richardson filed for bankruptcy, MWC, acting as counsel for Nationstar, sent Ms. Richardson a Notice of Impending Foreclosure Sale. The sale was scheduled for March 28, 2019.[1] In an attempt to prevent the sale, Ms. Richardson arranged for

---

[1] The notice erroneously listed the date of the sale as March 28, 2018, but the accompanying advertisement clarified the correct year as 2019.

her cousin, Carolyn Jackson, to purchase her home and redeem the mortgage. Ms. Jackson hired ATG Title, Inc., a real estate settlement agency, to help conduct the purchase. ATG then contacted MWC to request the specific amount needed to redeem Ms. Richardson's mortgage. Sometime before March 1, 2019, MWC sent Ms. Richardson a letter listing the payoff amount—good through March 5, 2019—as $270,647.21. Closing for this sale of the property to Ms. Jackson was scheduled to take place on March 26, 2019, and ATG requested an updated payoff amount from MWC that would be accurate as to that date. MWC, however, did not respond to ATG's request until after 5:00 pm on March 26. The updated payoff figure MWC sent erroneously included a tax lien Ms. Richardson had previously paid, making the payoff figure roughly $74,000 higher than MWC's earlier estimation. Ms. Jackson did not go through with the purchase. On March 28, 2019, the Trustees conducted the foreclosure sale and sold the property to Hantek Investments, LLC.

Following the foreclosure sale, Nationstar, represented by MWC, returned to the Superior Court to ratify the sale of the property. Ms. Richardson opposed the ratification motion and claimed that she was entitled to relief from wrongful foreclosure. Specifically, she argued (1) Nationstar[2] and MWC violated her right

---

[2] Ms. Richardson referred to Nationstar by its alleged tradename "Mr. Cooper" throughout these filings.

under the deed of trust and D.C. Code § 42-815.01(b) to receive an accurate report of the amount needed to cure the default on her mortgage prior to the foreclosure sale; (2) Nationstar engaged in fraudulent misrepresentation when MWC sent the incorrect payoff amount; and (3) the Trustees demonstrated "inequitable conduct with no regard [for the] fiduciary duty" they owed to Ms. Richardson. The Superior Court (Hon. Hiram Puig-Lugo) granted Nationstar's motion to ratify and rejected Ms. Richardson's claims, explaining that Ms. Jackson had obtained sufficient financing to purchase the property and cover the initial payoff amount; pursuant to D.C. Code § 42-815.01(b), Ms. Richardson's right to cure the default on her mortgage expired on March 22, 2019, five days before the scheduled foreclosure sale on March 28, 2019; and "all that Ms. Jackson had to do" to redeem Ms. Richardson's mortgage "was tender [the] payment no later than March 22nd," which did not occur. The court concluded that the incorrect payoff amount Nationstar provided Ms. Richardson on March 26, 2019, accordingly, did not prejudice her because her right to cure the default had already lapsed. Ms. Richardson moved for reconsideration, which the Superior Court denied. Ms. Richardson then appealed the Superior Court's order denying reconsideration, which this court dismissed as moot (again because the property had already been sold).

After Nationstar moved to ratify the accounting and close the case in the

Superior Court, Ms. Richardson continued to object to the foreclosure sale, arguing, among other things, that MWC and the Trustees had given her an inaccurate loan payoff amount and had failed to explain the error. The Superior Court once again rejected Ms. Richardson's arguments, ratified the accounting, and ordered the foreclosure sale as final.[3] Ms. Richardson did not appeal.

### B.     Ms. Richardson's Affirmative Suit

After the Superior Court closed the foreclosure case, Ms. Richardson filed suit against Nationstar; Freddie Mac; the Internal Revenue Service; Hantek Investments, LLC, the real estate broker who conducted the foreclosure sale; the Trustees; and MWC.     Ms. Richardson claimed, inter alia, that Nationstar and MWC (as Nationstar's counsel) had wrongfully foreclosed on her property, that Hantek and the real estate broker wrongfully evicted her, and that Nationstar, MWC, and the Trustees engaged in common law fraud and intentional misrepresentation. The Superior Court (Hon. Florence Y. Pan) dismissed Ms. Richardson's claims against

---

[3] Hantek Investments, LLC, the purchaser of the property, filed an eviction action in September 2019 in the landlord and tenant division of the Superior Court (2019 LTB 19572). Ms. Richardson filed a motion to dismiss, but the Superior Court (Hon. Melvin R. Wright) denied her motion and entered a nonredeemable judgment of possession for Hantek. Although Ms. Richardson unsuccessfully sought to stay her eviction and unsuccessfully appealed the Superior Court (Hon. Lee F. Satterfield)'s decision not to stay her eviction, she did not appeal the eviction judgment.

Nationstar as barred by res judicata and collateral estoppel following the foreclosure action, dismissed her claims against Hantek as barred by res judicata based on an earlier successful suit by Hantek for possession of the property, *see supra* note 3, and dismissed her claims against Freddie Mac for failure to state a claim. The court granted Nationstar, Hantek, and Freddie Mac a final judgment under Super. Ct. Civ. R. 54(b),[4] but held Ms. Richardson's claims against MWC and the Trustees (whom she had yet to serve) in abeyance. Ms. Richardson appealed the Superior Court's order[5] and this court summarily affirmed.

Back in Superior Court, Ms. Richardson obtained permission to file a second

---

[4] The Superior Court purported to grant a final judgment under Super. Ct. Civ. R. 54(b) to Nationstar, Hantek, and Freddie Mac during a hearing on Hantek's motion for entry of final judgment and for release of notice of *lis pendens*, but later issued a written order that specifically granted a final judgment only as to Hantek.

[5] In her brief to this court, Ms. Richardson did not mention that the court had granted a partial judgment under Rule 54(b) and inaccurately stated that "[t]his appeal is from a final order or judgment that disposes of all parties' claims." It is far from clear that the Superior Court's Rule 54(b) ruling either extended to Nationstar and Freddie Mac, *see supra* note 4, or was adequately substantiated as to any party. *See Peoples v. Warfield & Sanford, Inc.*, 660 A.2d 397, 403 (D.C. 1995) (explaining that the trial court's "Rule 54(b) certification must be accompanied by a statement of reasons explaining why the judgment should be deemed final for purposes of appeal"). Thus, it is unclear whether Ms. Richardson should have been able to separately appeal the partial judgment given to Nationstar, Hantek, and Freddie Mac.

amended complaint again naming MWC and the Trustees as defendants[6] and alleging that (1) the Trustees breached their fiduciary duty to Ms. Richardson by including the released tax lien in the second payoff letter and wrongly representing that they had been appointed as substitute trustees, (2) the Trustees and MWC engaged in fraudulent and/or intentional misrepresentation by providing her with an incorrect payoff amount and making misrepresentations about whether the Trustees were properly appointed, and (3) MWC engaged in negligent misrepresentation by providing the incorrect payoff amount. MWC and the Trustees moved to dismiss, averring that Ms. Richardson's claims were barred by res judicata and collateral estoppel based on the foreclosure litigation, and should be dismissed pursuant to Super. Ct. Civ. R. 12(b)(6). After Ms. Richardson argued that res judicata did not apply because MWC and the Trustees were not parties to the foreclosure action and were not in privity with Nationstar, MWC and the Trustees claimed that they had privity with Nationstar as Nationstar's agents and "[t]here [was] no viable inference that [their] involvement [in the foreclosure] was anything other than in the context of acting as agent[s] for [Nationstar] . . . as trustees and [Nationstar's] counsel."

---

[6] Ms. Richardson's complaint also indicated that Michael Cantrell, "the managing attorney" at MWC, had injured her but did not name him as a defendant, and she named Trustees Abby Moynihan, Erin Shaffer, and Yolanda Clarke as defendants but did not properly serve them.

The Superior Court (Hon. Yvonne Williams) initially mistakenly reviewed Ms. Richardson's first amended complaint (rather than her second amended complaint) and dismissed her claims as barred by res judicata. After Ms. Richardson moved for reconsideration, the Superior Court revisited its analysis but determined that res judicata continued to bar Ms. Richardson's claims because they mirrored arguments she had made or could have made in the foreclosure proceedings. The court indicated (incorrectly) that it believed Ms. Richardson had not disputed MWC and the Trustees' assertion of privity with Nationstar prior to her motion for reconsideration, and it ruled that the fraud exception to res judicata did not apply. Ms. Richardson timely appealed.

## II.     Analysis

Under the doctrine of res judicata, or claim preclusion, a final judgment on the merits bars relitigation in a subsequent proceeding of all claims that were actually litigated or "could have been litigated in the prior proceeding" between the same parties or their privies. *Faulkner v. Gov't Emps. Ins. Co.*, 618 A.2d 181, 183 (D.C. 1992).

In reviewing an order granting a motion to dismiss on res judicata grounds pursuant to Super. Ct. Civ. R. 12(b)(6), "[w]e accept all factual allegations in the complaint as true, and construe all facts and inferences in favor of the plaintiff."

*Peterson v. Washington Tchrs. Union*, 192 A.3d 572, 575 (D.C. 2018) (internal quotation marks omitted). "Whether the trial court correctly applied *res judicata* principles to the facts of this case is a legal issue that we decide *de novo*." *Shin v. Portals Confederation Corp.*, 728 A.2d 615, 618 (D.C. 1999).

Ms. Richardson does not contest that the foreclosure litigation ended with a final judgment on the merits but she argues that her claims against MWC and the Trustees were not barred by res judicata as a result of that litigation because (1) her second amended complaint raised distinct claims that were not, and could not have been, previously litigated; (2) the fraud exception to res judicata should apply; and (3) MWC and the Trustees were not in privity with Nationstar. We reject the first and second arguments and remand to allow litigation of the third.

### A.     Identity of Claims

Ms. Richardson first challenges the Superior Court's determination that identity of claims existed between her present suit and the foreclosure litigation, which encompasses the trial court's initial foreclosure order and the subsequent litigation of the post-sale ratification and accounting. We discern no error.

For res judicata to bar a subsequent action, the claim in the second action must be "the same as the claim which was raised or which might have been raised in the

prior proceeding." *Peterson*, 192 A.3d at 575 (quoting *Calomiris v. Calomiris*, 3 A.3d 1186, 1190 (D.C. 2010)). Whether a "present claim is the same" for purposes of res judicata, *id.*, depends "not [on] the theory on which a plaintiff relies" but on whether the claims share "a common nucleus of facts," *Faulkner*, 618 A.2d at 183 (internal quotation marks omitted); *see also Whiting v. Wells Fargo Bank, N.A.*, 230 A.3d 916, 927 (D.C. 2020) ("It does not matter that the earlier and later proceedings differ in nature: as long as . . . the essence of the claim and evidence necessary to establish it are the same . . . ." (internal quotation marks omitted)). In other words, "a second action may be precluded on the ground that the same claim or cause of action was advanced in the first action even though a different source of law is involved," *Smith v. Jenkins*, 562 A.2d 610, 614 (D.C. 1989) (quoting 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4411 (2d ed. 1981)), and res judicata will bar the subsequent litigation of affirmative claims that could have been raised in earlier litigation as a defense, *Shin*, 728 A.2d at 619.

To determine whether two actions arise out of a "common nucleus of facts," we consider "the nature of the two actions" and "whether the facts [in each] are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Faulkner*, 618 A.2d at 183 (quoting *Smith*, 562

A.2d at 613). While the facts underlying each claim must be closely related, they need not be a carbon copy for identity of claims to exist; "additions to or subtractions from the central core of fact do not change this substantial identity so as to support piecemeal appeals." *Id.* (quoting *Smith*, 562 A.2d at 613). In short, our analysis is "pragmatic[]," driven by the goal of "protecting adversaries from expensive and vexatious multiple lawsuits, conserving judicial resources, and minimizing the likelihood of inconsistent outcomes." *Smith*, 562 A.2d at 613, 615.

Ms. Richardson's present suit involves the same claims that were or could have been at issue in the foreclosure action. In this suit, Ms. Richardson alleged that the Trustees and MWC misrepresented the payoff amount and the Trustees breached their fiduciary duty to her by sending her the incorrect payoff amount. She also claimed that the Trustees and MWC wrongly represented that Nationstar held the promissory note and that it therefore had standing to bring the foreclosure action and had the power to appoint the Trustees. Similarly, in the foreclosure litigation, Ms. Richardson defended against the ratification of the sale and the accounting by arguing that Nationstar and MWC had failed to provide her with an accurate payoff amount; Nationstar's error amounted to fraudulent misrepresentation; and the Trustees' error constituted a breach of "their fiduciary duty." And she defended against Nationstar's initial claim to foreclosure by arguing that Nationstar was "not a holder in due course" of the note, and, therefore, did not have the same rights as

the lender to foreclose on her property. Although Ms. Richardson's present suit repackages her foreclosure defenses as claims to affirmative relief, these claims involve the same facts and arguments she has already litigated. *See Stutsman v. Kaiser Found. Health Plan of Mid-Atl. States, Inc.*, 546 A.2d 367, 370 (D.C. 1988) (observing that, for purposes of res judicata, whether a litigant brings a "second action under a different [legal] theory . . . is irrelevant"; res judicata hinges on whether the "factual nucleus" of the subsequent claim is the same, "not the theory upon which a plaintiff relies"). Moreover, although Ms. Richardson's suit additionally challenges the validity of the deed of appointment of substitute trustees in the foreclosure litigation, she could have litigated this claim as a defense in the foreclosure action given that Nationstar executed the deed in 2015—well before the 2017-2019 foreclosure litigation. *See Shin*, 728 A.2d at 619 (holding that res judicata barred an affirmative claim that appellant could have raised in earlier litigation as a defense). In short, Ms. Richardson has or could have litigated the subject matter of each of her claims in the instant suit in the foreclosure litigation.[7]

---

[7] Ms. Richardson cites out-of-jurisdiction cases holding that "for *res judicata* purposes, claims that 'could have been brought'" in the prior action are only those claims "in existence at the time the original complaint is filed or claims actually asserted . . . in the earlier action." *Manning v. Auburn*, 953 F.2d 1355, 1360 (11th Cir. 1992) (footnote and emphasis omitted). Our court has never squarely addressed this question. *But see Calomiris*, 3 A.3d at 1192 (holding res judicata did not bar claims that did not exist "prior to the *entry of judgment*" (emphasis added)); *Wang*

Ms. Richardson's reliance on *Molla v. Sanders*, 981 A.2d 1197, 1200-02 (D.C. 2009), and *Goldkind v. Snider Bros., Inc.*, 467 A.2d 468, 473-74 (D.C. 1983), two cases in which we concluded that litigants' subsequent causes of action raised entirely different issues and were therefore not barred by res judicata, is misplaced. In *Molla*, the Superior Court rejected an ejectment suit brought by the purchaser of a property at a foreclosure sale against the property's existing tenant because it concluded that the tenant continued to have a valid lease.[8] 981 A.2d at 1198. The purchaser then attempted to retroactively raise the tenant's rent and sued the tenant for possession based on nonpayment of rent. *Id.* at 1198-99. We concluded that the purchaser's second suit was not barred by the first because it raised different facts and issues—the first suit dealt only with whether the tenant's lease survived the foreclosure, not whether the purchaser could alter the lease's terms. *Id.* at 1201-02.

---

*v. 1624 U Street, Inc.*, 252 A.3d 891, 898 (D.C. 2021) (explaining that claims were not barred by res judicata when they "could not have been brought *during* the [prior] proceedings" (emphasis added)). Even if we were to apply res judicata only to claims "in existence at the time the original complaint [in the earlier action] is filed or claims *actually* asserted . . . in the earlier action," *Manning*, 953 F.2d at 1360 (footnote omitted), however, Ms. Richardson's present claims would still be barred. As explained above, Ms. Richardson's present claims are all arguments that she either raised during the foreclosure/ratification litigation or—in the case of her claim about the validity of the deed of appointment—were available to her before Nationstar filed its original complaint.

[8] The purchaser purported to bring claims for "wrongful detainer," but because there is "no statutory action for 'wrongful detainer' in the District of Columbia," we interpreted the action as one for ejectment. *Molla*, 981 A.2d 1200.

By contrast, in both Ms. Richardson's foreclosure case and the current litigation, she contested whether Nationstar could properly exercise rights under the deed of trust and whether she was prejudiced by the incorrect payoff letter as part of the foreclosure action. And she could have raised the validity of the Trustees' appointment—an issue related to the scope of Nationstar's rights under the deed of trust—as a defense to the foreclosure sale's ratification.

*Goldkind* is similarly distinct. In *Goldkind*, trustees on a deed of trust won a judgment of foreclosure against the purchasers of an apartment building. 467 A.2d at 470. Around the same time, the purchasers sued the parties who sold them the building, the broker, and an employee of the broker for fraud and other claims. *Id.* at 469-70. After the defendants moved to dismiss, this court, sitting en banc, determined that res judicata *did* bar the purchasers' fraud claims against the sellers, the broker, and the employee because the purchasers could have raised those claims as a defense to the foreclosure action. *Henderson v. Snider Bros., Inc.*, 439 A.2d 481, 486 (D.C. 1981) (en banc). But the division in *Goldkind* determined that res judicata did not bar the sellers' crossclaims against the broker and employee to indemnify themselves from any wrongdoing on those parties' behalf because the crossclaims—which dealt with whether the sellers and broker had an agency relationship—were unrelated to the earlier foreclosure action—which dealt with whether the purchasers had defaulted on their mortgage. 467 A.2d at 474. Unlike

the crossclaims in *Goldkind*, however, the issues in Ms. Richardson's present action—whether Nationstar could bring the foreclosure action, the Trustees were properly appointed, and Ms. Richardson was prejudiced by the incorrect payoff amount—are all integrally related to whether Nationstar properly foreclosed on her property and are issues that she raised or could have raised in that litigation.

Lastly, Ms. Richardson argues that the claims in her present suit and the ones she raised in the foreclosure action are unrelated because the motivations behind the suits were different, the Trustees experienced a conflict of interest in the foreclosure litigation, and, if she had brought claims against the Trustees or MWC during the foreclosure litigation, MWC would have been forced to cease its representation of Nationstar, which would have "complicate[ed] the judicial foreclosure process." None of these arguments is persuasive.

Ms. Richardson's contention that her present suit—which seeks to address "the duplicitous course of conduct engaged in by . . . MWC[] [and] the Trustees" during the foreclosure proceedings—has a different motivation than Nationstar's motive in bringing the foreclosure action sets up a false comparison. The issue is not whether her motives in bringing the present suit aligned with Nationstar's goals in pursuing foreclosure, but whether "the facts" she alleged in her defenses to the foreclosure/ratification litigation "are related in time, space, origin, or motivation"

to the facts she alleges here. *Smith*, 562 A.2d at 613. Because the facts Ms. Richardson asserted in the foreclosure/ratification litigation were largely identical to the facts she asserts in the present litigation, and she raised these facts in both suits to argue that MWC and the Trustees engaged in misconduct, her factual assertions shared a common nucleus. *See id.* at 613-14 (concluding that, where appellant raised the same sequence of events in a subsequent suit, the factual nuclei were "related in time, space, origin, and motivation"). And neither the Trustees' purported conflict of interest nor any procedural complexity that would have arisen had she added claims against MWC in the foreclosure litigation negates the conclusion that the facts underlying Ms. Richardson's present claims and her defenses in the foreclosure litigation are largely the same and "form a convenient trial unit." *Id.* We therefore conclude that the claims in Ms. Richardson's present suit are the same claims that she raised or could have raised in the foreclosure litigation, satisfying the first element of res judicata.

## B. Fraud Exception

Ms. Richardson also argues that res judicata does not apply to her claims because the foreclosure litigation was "tainted by fraud." We disagree.

Res judicata will not bar a subsequent suit if the prior judgment was the product of "extrinsic fraud." *See Laufer v. Westminster Brokers, Ltd.*, 532 A.2d 130,

133 (D.C. 1987) (explaining that extrinsic fraud "may justify non-enforcement of an otherwise valid judgment"); *see also Interdonato v. Interdonato*, 521 A.2d 1124, 1132 (D.C. 1987) ("[A] prior judgment operates as *res judicata* only in the absence of fraud or collusion."). Fraud is extrinsic if it involves "deception in the conduct of the [earlier] litigation itself, rather than fraud affecting the merits of the underlying claim." *Laufer*, 532 A.2d at 133. We have applied the extrinsic fraud exception, for example, where there was a dispute over whether one party fraudulently induced the other to dismiss an earlier action. *Interdonato*, 521 A.2d at 1132-33; *see also In re Estate of Delaney*, 819 A.2d 968, 981 n.4 (D.C. 2003) (explaining that fraud is extrinsic if it prevents a party from presenting their case).

By contrast, res judicata will bar a subsequent suit even if the prior judgment is alleged to have been the product of "intrinsic fraud," i.e., if the merits of the claim involve alleged fraud. *Laufer*, 532 A.2d at 133 (res judicata applies to claims involving alleged "fraud in the matter on which the decree was rendered" (emphasis omitted) (quoting *United States v. Throckmorton*, 98 U.S. 61, 68 (1878))); *accord In re Estate of Delaney*, 819 A.2d at 981 n.4 (describing "intrinsic fraud" as "fraud which arises within the court proceeding and concerns an issue that speaks directly to a determination on the merits"). We have explained that fraud is intrinsic to the litigation where, for example, a party alleges "undue influence [or] fraud in obtaining [a] will," *In re Estate of Delaney*, 819 A.2d at 981 n.4, or where a party withholds

information during the litigation that the other party could have used as a defense, *Laufer*, 532 A.2d at 134.

The fraud alleged by Ms. Richardson is intrinsic in nature and hence does not preclude the application of res judicata. Ms. Richardson argues that res judicata should not apply to her suit because (1) Nationstar—with MWC and the Trustees' assistance—deceived the Superior Court into believing that Nationstar had standing by falsely representing that Nationstar was the holder of Ms. Richardson's promissory note, (2) MWC and the Trustees falsely asserted to the Superior Court that the Trustees had been properly appointed, and (3) MWC and the Trustees made misleading statements to Ms. Richardson about the payoff amount on her loan. But each of these assertions is about the merits of the underlying foreclosure litigation— they are not allegations of fraud that "prevent[ed] [Ms. Richardson] from presenting a case." *In re Estate of Delaney*, 819 A.2d at 981 n.4. If MWC and the Trustees are able to demonstrate privity with Nationstar, res judicata will therefore apply.

## C. Privity of the Relevant Parties

For res judicata to apply, the moving party must show that "the party against whom the [claims are] asserted was a party or in privity with a party in the prior case." *Calomiris*, 3 A.3d at 1190 (quoting *Elwell v. Elwell*, 947 A.2d 1136, 1140 (D.C. 2008)). Ms. Richardson contends that MWC and the Trustees were not named

parties in the foreclosure litigation and have not established that they were in privity with Nationstar. Based on the record before us, we agree that MWC and the Trustees did not carry their burden to show that they were in privity with Nationstar. *Johnson v. D.C. Rental Hous. Comm'n*, 642 A.2d 135, 139 (D.C. 1994) ("*Res judicata* is an affirmative defense that must be pleaded and established by the proponent."). But because it is unclear that they cannot do so, we decline to reverse and instead remand.

For a party to be in privity with another, they must be "so identified in interest . . . that [they] represent[] precisely the same legal right in respect to the subject matter of the case." *Bell v. Weinstock, Friedman & Friedman, P.A.*, 285 A.3d 505, 509 (D.C. 2022) (quoting *Patton v. Klein*, 746 A.2d 866, 870 (D.C. 1999)). "Traditional categories of privies include 'those who control an action although not parties to it . . . ; those whose interests are represented by a party to the action . . . ; [and] successors in interest.'" *Patton*, 746 A.2d at 870 (quoting *Smith*, 562 A.2d at 615).

Before the Superior Court and this court, MWC and the Trustees argued that they were in privity with Nationstar by virtue of their agency relationship and their roles as Nationstar's counsel and trustees on the mortgage. The trial court did not address the adequacy of these arguments, incorrectly concluding that Ms. Richardson had conceded the issue of privity by not raising it prior to her motion

for reconsideration. In fact, Ms. Richardson rightly argued in opposition to MWC and the Trustees' motion to dismiss that their barebones assertions of privity were insufficient to carry their burden.

As we have often observed, "[a]gents and principals . . . are not ordinarily in privity with each other." *Bell*, 285 A.3d at 509 (quoting *D.C. Redevelopment Land Agency v. Dowdey*, 618 A.2d 153, 163 (D.C. 1992)). Rather, "[a] decision on the merits in an action against the principal is *res judicata* in a later action against the agent only 'if the prior action concerned a matter within the agency.'" *Id*. (quoting *Major v. Inner City Prop. Mgmt., Inc.*, 653 A.2d 379, 381 (D.C. 1995)). Moreover, "[a]lthough attorneys may act as agents of their clients when they act in their role as counsel," merely showing that an attorney acted "on behalf of a client or within the scope of their agency" is not enough to establish privity between the parties. *Id*. at 511. "Even in such circumstances, the interests of attorneys may not align with their clients' and attorneys do not have full control over litigation such that it may be automatically assumed that they had fully litigated their interests in an earlier representation of a client." *Id*. Thus, to establish privity between an attorney and their client, the party asserting res judicata must show "a mutuality of legal interests" between the two parties. *Id*. at 510. MWC put forward no evidence or argument before the Superior Court about the "mutuality of [its] legal interests" with Nationstar. *Id*. Instead, its only argument as to why privity existed between the two

was that it acted as Nationstar's counsel. Absent any showing as to whether MWC's legal interests aligned with Nationstar's, we cannot conclude that the two were in privity.

We likewise cannot conclude that privity existed between Nationstar and the Trustees. Before the Superior Court, the Trustees' sole argument in favor of privity was that, by virtue of their role as trustees, there was "no viable inference that [their] involvement [in the foreclosure case] was anything other than in the context of acting as agent for the lender, Nationstar." But the Trustees put forward no evidence or argument about the scope of their agency relationship with Nationstar, as defined by the deed of trust or foreclosure order, nor did they directly respond to Ms. Richardson's argument that they acted outside of the scope of their agency relationship in providing her with the incorrect payoff amount.

MWC and the Trustees may very well be able to establish privity with Nationstar on remand. But because neither MWC nor the Trustees have so far established privity with Nationstar, the Superior Court erred in concluding on this record that res judicata applied.

### III.   Conclusion

We are mindful of the fact that Ms. Richardson has been challenging the

propriety of the sale of her home at foreclosure in the courts for almost a decade, resulting in expenditure of extensive judicial resources in Superior Court and multiple appeals to this court. *See* 17-CV-1078, 17-CV-1165, 19-CV-0989, 21-CV-0117. Nevertheless, for the foregoing reasons, we are constrained to reverse the dismissal of Ms. Richardson's claims based on res judicata and to remand for further proceedings consistent with this opinion.[9] On remand, we encourage the trial court to address all issues raised by the parties and to make alternative rulings as necessary, with the aim of finally resolving all of Ms. Richardson's claims.

*So ordered*.

---

[9] In addition to arguing that Ms. Richardson's claims against them were barred by res judicata, MWC and the Trustees moved to dismiss these claims pursuant to Super. Ct. Civ. R. 12(b)(6). The trial court did not address whether Ms. Richardson had failed to state a claim, however, and in the absence of any briefing to this court on this point, we are unable to consider whether her claims may be dismissed on alternative grounds. *Whiting*, 230 A.3d at 921 (explaining that this court "may affirm the trial court's ruling on any basis supported by the record if the appellant will suffer no procedural unfairness").