# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

No. 23-7158                  **September Term, 2024**
FILED ON: MAY 20, 2025

ALEXANDER GALLO,
        APPELLANT

v.

DISTRICT OF COLUMBIA,
        APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:21-cv-03298)

Before: WILKINS and RAO, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge.*

## J U D G M E N T

This appeal was considered on the record and on the briefs and oral arguments of the parties. The panel has afforded the issues full consideration and has determined that they do not warrant a published opinion. *See* FED. R. APP. P. 36; D.C. CIR. R. 36(d). It is

**ORDERED AND ADJUDGED** that the order of the United States District Court for the District of Columbia be **AFFIRMED**.

In early 2020, the District of Columbia ("D.C.") enacted emergency legislation to address issues caused by the COVID-19 pandemic. Among those laws were two amendments to the Rental Housing Act of 1980, which precluded landlords from initiating eviction proceedings against protected tenants and paused ongoing eviction proceedings. Plaintiff-Appellant Alexander Gallo, a landlord, purchased property at a foreclosure sale just before the pandemic and believed that the moratoria made it impossible for him to remove the former owner from the premises. He thus filed suit, *pro se*, to challenge the moratoria as unconstitutional in violation of the Contracts Clause and the Takings Clause. The District Court permitted Gallo to amend his complaint several times, but ultimately dismissed the pleading for failure to state a claim. We affirm, albeit on alternative grounds, because Gallo's complaint fails to allege the elements of either constitutional claim.

**I.**

The D.C. Rental Housing Act of 1980 ("RHA") protects statutory tenants, including by imposing procedures and safeguards for eviction proceedings. The Act defines a "tenant" as "a tenant, subtenant, lessee, sublessee, or other person entitled to the possession, occupancy, or the benefits of any rental unit owned by another person." D.C. CODE § 42-3501.03(36) (2001). Under the D.C. Code, "[w]hen a person detains possession of real property without right, or after his right to possession has ceased," a landlord can file a request with the Superior Court to "issue a summons . . . to the party complained of to appear and show cause why judgment should not be given against him for the restitution of possession." *Id.* § 16-1501 (1980). Gallo owns and manages ten condominium units in the District. In February 2020, he purchased a condo at a foreclosure sale (the "Foreclosure Unit"), which was previously owned by Andre Hopkins. Gallo noticed Hopkins that he must quit the premises by May 5, 2020.

But on March 11, 2020, Mayor Muriel Bowser declared a public health emergency due to COVID-19. *See* Mayor's Order 2020-046, 67 D.C. Reg. 2961 (Mar. 11, 2020). Shortly thereafter, the D.C. Council amended the eviction restrictions set forth in the RHA. *See* COVID-19 Response Emergency Amendment Act of 2020, D.C. Act 23-247, § 308(b), 67 D.C. Reg. 3093, 3102–03 (Mar. 17, 2020) (amending D.C. CODE § 42-3505.01(k)) ("Eviction Moratorium"). After amendment, it precluded landlords from evicting tenants "[d]uring a period of time for which the Mayor has declared a public health emergency," D.C. CODE § 42-3505.01(k)(3) (2020), except in cases of illegal conduct, undue hardship on neighbors, and abandonment, *id.* § 42-3505.01(k-1) (2020). On April 10, 2020, the D.C. Council paused its debt collection provisions pending the duration of the public health emergency. *See* COVID-19 Response Supplemental Emergency Amendment Act of 2020, D.C. Act 23-286, § 207, 67 D.C. Reg. 4178, 4198–99 (Apr. 10, 2020).

By May 5, 2020, Hopkins had not vacated the Foreclosure Unit, so Gallo filed a complaint for possession to remove him from the premises. But on May 13, 2020, the District passed another emergency law. *See* Coronavirus Omnibus Emergency Amendment Act of 2020, D.C. Act 23-317, § 10, 67 D.C. Reg. 5235, 5243 (May 13, 2020) ("Filing Moratorium"). This Act amended the District's eviction summons provision, adding a subsection that stated: "During a period of time for which the Mayor has declared a public health emergency . . . and for 60 days thereafter, the person aggrieved shall not file a complaint seeking relief pursuant to this section." D.C. CODE § 16-1501(b) (2020).

Gallo and other landlords sued in Superior Court to challenge the moratoria. On December 16, 2020, the court ruled that the moratoria were unconstitutional in violation of the landlords' due process right of access to the courts. *Borger Mgmt., Inc. v. Hernandez-Cruz*, No. 2020 LTB 006637, 2020 WL 9720202 (D.C. Super. Ct. Dec. 16, 2020). The District defended its emergency legislation before the D.C. Court of Appeals, which reversed and ruled that the moratoria were facially constitutional. *District of Columbia v. Towers*, 260 A.3d 690, 696 (D.C. 2021).

Gallo initiated this action on November 19, 2021, in Superior Court. On December 16, 2021, the District removed the action to District Court. The District Court granted the District's motion to dismiss, *Gallo v. District of Columbia*, 610 F. Supp. 3d 73, 91 (D.D.C. 2022), but then

granted reconsideration, allowing Gallo to amend his complaint, *Gallo v. District of Columbia*, 659 F. Supp. 3d 21, 26 (D.D.C. 2023). Gallo filed two amended complaints, and the District renewed its motion to dismiss, which once again was granted. *Gallo v. District of Columbia*, No. 21-cv-3298 (TNM), 2023 WL 7552703, at \*7 (D.D.C. Nov. 14, 2023). This timely appeal followed. We appointed *amicus* to present arguments in support of Gallo's position that *amicus* deemed potentially meritorious.

## II.

"We review the dismissal of constitutional claims *de novo*." *Fraternal Ord. of Police, Metro. Police Dep't Lab. Comm., D.C. Police Union v. District of Columbia*, 45 F.4th 954, 957 (D.C. Cir. 2022). "A plaintiff's complaint need only provide 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to survive a motion to dismiss." *Atherton v. D.C. Off. of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009) (quoting FED. R. CIV. P. 8(a)(2)). "We accept the operative complaint's well-pleaded factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor." *Ho v. Garland*, 106 F.4th 47, 50 (D.C. Cir. 2024) (internal quotation marks and citations omitted). "A *pro se* complaint must be held to less stringent standards than formal pleadings drafted by lawyers, but even it must plead factual matter that permits the court to infer more than the mere possibility of misconduct." *Jones v. Horne*, 634 F.3d 588, 596 (D.C. Cir. 2011) (internal quotation marks and citations omitted). The permissive standard is not, however, "a license for a plaintiff filing *pro se* to ignore the Federal Rules of Civil Procedure." *Moore v. Agency for Int'l Dev.*, 994 F.2d 874, 876 (D.C. Cir. 1993) (quotation omitted). "[N]othing in our case law requires a district court to go on a fishing expedition for new claims." *Greenhill v. Spellings*, 482 F.3d 569, 573 (D.C. Cir. 2007).

## III.

Gallo urges us to reverse the dismissal of his Second Amended Complaint ("SAC") and revive his Contracts Clause and Takings Clause claims. Court-appointed *amicus* agrees with the District that Gallo has failed to state a claim under the Contracts Clause and has not stated a Takings Clause claim related to the Foreclosure Unit. But *amicus* contends that the SAC alleges sufficient facts to state a takings claim as to tenants other than Hopkins. Because we disagree with Gallo on all counts, we affirm the dismissal of the SAC in its entirety.

## A.

Gallo first challenges the District Court's dismissal of his Contracts Clause claim, brought under 42 U.S.C. § 1983. The District Court *sua sponte* raised and resolved against Gallo the issue of whether such a claim is cognizable under § 1983. *See Gallo*, 2023 WL 7552703, at \*4. Gallo correctly points out that the Circuits are split as to whether § 1983 permits a plaintiff to bring a claim under the Contracts Clause. *Compare Crosby v. City of Gastonia*, 635 F.3d 634, 641–43 (4th Cir. 2011) (holding that the Contracts Clause is not actionable under § 1983), *and Kaminski v. Coulter*, 865 F.3d 339, 346–47 (6th Cir. 2017) (same), *with S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 886–87 (9th Cir. 2003) (per curiam) (concluding otherwise). Other courts have declined to weigh in. *See Watters v. Bd. of Sch. Dirs. of City of Scranton*, 975 F.3d 406, 412–16

3

(3d Cir. 2020) (assuming that § 1983 confers private right of action for Contracts Clause claim and affirming dismissal); *Alarm Detection Sys., Inc. v. Village of Schaumburg*, 930 F.3d 812, 825 n.2 (7th Cir. 2019) (same); *Heights Apartments, LLC v. Walz*, 30 F.4th 720, 727–32 (8th Cir. 2022) (assuming § 1983 applies and reversing dismissal because complaint sufficiently plead Contracts Clause violation). We too need not wade into this territory, because even assuming that the Contracts Clause is cognizable under § 1983, Gallo has failed to allege the requisite elements.

The Contracts Clause provides that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts." U.S. CONST. art. I, § 10, cl. 1. Under the D.C. Home Rule Act, this clause applies to the District. D.C. CODE § 1-203.02 (2001). To articulate a violation of the Contracts Clause, one must allege that the challenged law (1) applies retrospectively to an existing contract, (2) "substantially" impairs those existing contract rights, *D.C. Police Union*, 45 F.4th at 961 (citing *Sveen v. Melin*, 584 U.S. 811, 819 (2018)), and (3) is not "drawn in an appropriate and reasonable way to advance a significant and legitimate public purpose," *Sveen*, 584 U.S. at 819 (internal quotation marks omitted). The District argues that Gallo has failed to allege a Contracts Clause violation at every step.

Gallo's failure to allege the existence of a contract is fatal to his Contracts Clause claim. Under D.C. law, an essential element of contract formation "is a manifestation of agreement or mutual assent by the parties to the terms thereof." *Davis v. Winfield*, 664 A.2d 836, 838 (D.C. 1995) (internal quotation marks and citations omitted). "[I]n other words, to establish a contract the minds of the parties must be in agreement as to its terms." *Id.* (quoting *Klein v. Weiss*, 395 A.2d 126, 141 (Md. 1978)). "Mutual assent to a contract . . . is most clearly evidenced by the terms of a signed written agreement, but such a signed writing is not essential to the formation of a contract." *Id.* "The parties' acts at the time of the making of the contract are also indicative of a meeting of the minds." *Id.*

The SAC alleges that Gallo purchased the Foreclosure Unit at an auction in February 2020 and took title to the property, where the prior owner, Hopkins, still lived. Gallo noticed Hopkins to terminate his tenancy at will. Following the Filing Moratorium, Hopkins did not vacate the condo. Gallo does not allege that he and Hopkins had any contractual relationship, for instance, through the mutual execution of a lease.

District law provides that "a foreclosure sale of property extinguishes any subordinate leases with the mortgagor and the tenants who remain on the property stand as tenants-at-will in relation to the new owner." *Banks v. E. Sav. Bank*, 8 A.3d 1239, 1243 (D.C. 2010) (internal quotation marks and citations omitted); D.C. CODE § 42-522 (2001) ("[I]n case of a sale of real estate under mortgage or deed of trust or execution, and a conveyance thereof to the purchaser, the grantor in such mortgage or deed of trust, execution defendant, or those in possession claiming under him, shall be held and construed to be tenants at will."). The D.C. Court of Appeals has made clear that "[a]ssuming [persons] were tenants at will after foreclosure, they were not in a contractual relationship with [the owner], which purchased the property at foreclosure." *Taylor v. First Am. Title Co.*, 509 A.2d 96, 97 (D.C. 1986). The SAC contains no allegations to subvert the rule that Hopkins, a post-foreclosure tenant at will, had no contractual relationship with Gallo. And Gallo himself has disclaimed that Hopkins was his tenant.

We thus affirm the dismissal of Gallo's Contracts Clause claim and deny his Motion for Judicial Estoppel as moot.

**B.**

Gallo also fails to state a Takings Clause claim as to the Foreclosure Unit. The Fifth Amendment provides that "private property [shall not] be taken for public use, without just compensation." U.S. CONST. amend. V. "The right to exclude is one of the most treasured rights of property ownership." *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 149 (2021) (internal quotation marks omitted). It is "one of the most essential sticks in the bundle of rights that are commonly characterized as property." *Kaiser Aetna v. United States*, 444 U.S. 164, 176 (1979). "When the government effects a physical appropriation of private property for itself or another— whether by law, regulation, or another means—a *per se* physical taking has occurred." *Cmty. Hous. Improvement Program v. City of New York*, 59 F.4th 540, 550 (2d Cir.), *cert. denied*, 144 S. Ct. 264 (2023). "The permanence and absolute exclusivity of a physical occupation distinguish it from temporary limitations on the right to exclude. Not every physical *invasion* is a taking." *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 435 n.12 (1982). For instance, in *Loretto*, the Court found there to be a physical taking under a New York statute which required landlords to facilitate the installation of permanent cable facilities on their properties. This statute infringed on landlords' core property rights because a permanent occupation of physical property deprives the owner of the "right to possess the occupied space himself" or "exclude the occupier from possession and use of the space," "forever denies the owner any power to control the use of the property," and hinders the owner's ability to sell the occupied property. *Id.* at 435–36.

Here, however, Gallo has not alleged a taking because the challenged moratoria did not infringe upon his right to exclude Hopkins from the Foreclosure Unit through the District's civil ejectment process. The Filing Moratorium applied only to eviction actions under D.C. Code § 16-1501, not ejectments under §§ 16-1101 et seq. And the Eviction Moratorium did not apply to the Foreclosure Unit at all, as Hopkins was not a protected "tenant" under the RHA. *See* D.C. CODE § 42-3505.01(k) (limiting Eviction Moratorium to "tenant[s]"); *id.* § 42-3501.03(36) (defining tenant as "a tenant, subtenant, lessee, sublessee, or other person entitled to the possession, occupancy, or the benefits of any rental unit owned by another person"). Since Hopkins formerly owned the Foreclosure Unit and did not possess a lease, Gallo and Hopkins never had a landlord-tenant relationship that would protect Hopkins under the RHA. Under District of Columbia law, "[a] landlord-tenant relationship does not arise by mere occupancy of the premises; absent an express or implied contractual agreement, with both privity of estate and privity of contract, the occupier is in adverse possession as a 'squatter.'" *Nicholas v. Howard*, 459 A.2d 1039, 1040 (D.C. 1983) (quoting 3 GEORGE W. THOMPSON, THOMPSON ON REAL PROPERTY § 1029, at 87–90 (1980)). For instance, the D.C. Court of Appeals declined to extend protection under a rent-control statute to tenants at will who held over after foreclosure, reasoning that "tenancy arising from mere possession is not that which is referred to in the rent control statute." *Simpson v. Jack Spicer Real Est., Inc.*, 396 A.2d 212, 215 (D.C. 1978) (interpreting D.C. Rental Accommodations Act of 1975), which defines "tenant" nearly identically to the RHA). Hopkins

was not a tenant protected by the RHA. *See City Ctr. Real Estate, LLC v. 1606 7th Street NW, LLC*, 263 A.3d 1036, 1043 (D.C. 2021) ("[T]he term 'tenant' in the RHA inescapably means the leaseholder and does not extend to a person who simply occupies a space in a residential way.") (internal quotation marks and citations omitted).

The moratoria thus did not eliminate all remedies available to Gallo to remove Hopkins, a non-tenant, for failure to quit the premises. Gallo could have removed Hopkins through civil ejectment, which is available if "the defendant is wrongfully exercising acts of ownership over the premises." D.C. CODE § 16-1103 (2001). Because the moratoria did not purport to amend the ejectment provision, Coronavirus Omnibus Emergency Act of 2020, D.C. Act 23-317, § 10, 67 D.C. Reg. 5235, 5243 (May 22, 2020) (amending the RHA to provide that pending a public health emergency, "the person aggrieved shall not file a complaint seeking relief *pursuant to this section*") (emphasis added), ejectment supplied the vehicle for landlords like Gallo to evict those not protected by Section 16-1501, like Hopkins. *Cf. Molla v. Sanders*, 981 A.2d 1197, 1201–02 (D.C. 2009) (recognizing "that appellant could not evict appellee through an action for ejectment, but must follow the eviction procedure set forth in the [RHA]" because a valid lease "permitted appellee to resist ejectment and continue her tenancy with the new owner").

Here, because the SAC alleges that Hopkins was a trespasser in the Foreclosure Unit following the foreclosure sale (rather than a tenant), nothing in the moratoria prevented Gallo from removing him. Gallo alleges that Hopkins began to unlawfully possess the Foreclosure Unit when "he did not quit the premises by the deadline of May 5, 2020," at which point "Hopkins was no longer in privity with" Gallo, and they "ceased to be in any 'Relationship.'" A186 (SAC ¶¶ 8, 9); *see also* A187 (SAC ¶ 12) (Gallo "terminated" Hopkin's "right to possession" as of that date) (emphasis omitted). "On May 5, 2020, the former tenant Hopkins became a trespasser in the Foreclosure Unit." A187 (SAC ¶ 10) (emphasis omitted); *id.* (SAC ¶ 12) (describing Hopkins as "squat[ting]"). The SAC never alleges that Gallo attempted to remove Hopkins through ejectment. Although Gallo argues on reply for the first time that "Hopkins *was* sued in ejectment," Appellant Reply Br. 5 (emphasis added), such a factual allegation does not appear in the SAC. We thus dismiss Gallo's takings claim for failure to state a claim.

## C.

Finally, we decline to read into the pleading claims as to unspecified other tenants, because Gallo failed to allege the requisite facts to support any such claim with sufficient specificity. Dismissal of the claims as to the Foreclosure Unit is dispositive, unless Gallo also alleged constitutional violations as to other tenants. Gallo urges us to read the SAC as encompassing Contracts Clause and Takings Clause claims as to other units, and court-appointed *amicus* argues that Gallo has alleged a takings claim as to tenants other than Hopkins. The District argues that any such claim is forfeited for failure to raise below or on appeal and the SAC is not fairly read as pleading claims as to tenants other than Hopkins. The District has the better of this dispute.

After the District moved to dismiss Gallo's First Amended Complaint, Gallo clarified in his opposition that he read his pleading as concerning "all [his] condos and all [his] leases, requesting nominal damages, declaratory judgment, and mental anguish." Pl.'s Opp'n to District's Mot. to Dismiss Am. Compl., *Gallo*, No. 21-cv-3298 (D.D.C. May 9, 2023), ECF No. 44, at 1

6

(emphasis omitted). As such, the District Court gave Gallo a chance to amend his pleading, recognizing that Gallo "sa[id] that he is suing for other rental units" besides the Foreclosure Unit, but that he gave "almost no information about them." A182. The District Court ordered Gallo to amend his complaint to "clarify which claims apply to which units." A183.

After he did so, Gallo's SAC alleged that after the Filing Moratorium, "[e]very occupant was now immune from suit in the event they decided to stop paying rent going forward." A187 (SAC ¶ 12) (emphasis omitted). It further stated that "all of Plaintiff's leases were thus made legally unenforceable, leaving him in a precarious state of being personally liable for $7,000 per month in expenses while having his ability to enforce leases withdrawn." *Id.* (SAC ¶ 14). The SAC alleges that in Spring 2021, "some of Plaintiff's lessees began breaching their leases (not paying) while Plaintiff had no remedy," which "continued for six months," such that one tenant accrued $6,000 in unpaid rent. A191 (SAC ¶¶ 32, 34). "Accordingly, two of Plaintiff's lessees became trespassers in spring 2021, while he was compelled . . . to house them for free. The Filing Ban thus compelled the occupancy of trespassers." *Id.* (SAC ¶ 33) (footnote omitted). "Another lessee simultaneously defaulted while Plaintiff had no remedy. As of summer 2021, Plaintiff thus had three units paying zero while he had no remedy." A192 (SAC ¶ 35).

But Gallo neither identifies particular tenants that he desired to evict, nor quantifies the lost rent, if any. The SAC does not seek unpaid rent from any units other than the Foreclosure Unit. Instead, the SAC suggests that some tenants made up for nonpayment, A194 ("Some people who 'accrued arrearage' paid the loot back."), and Gallo conceded at argument that he was compensated to some unspecified degree, Oral Arg. Tr. 8:24–9:11. While he articulated some additional factual allegations as to other units, Gallo entirely failed to comply with the District Court's order that he clarify which *claims* applied to which units. Notwithstanding our liberal pleading standards for *pro se* litigants, we "are far less charitable when one or more amended pleadings already have been filed with no measurable increase in clarity." 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FED. PRAC. & PROC. § 1217 (4th ed. 2025); *cf.* FED. R. CIV. P. 41(b) (permitting dismissal for failure "to comply with . . . a court order").

Here, "the complaint failed to articulate either the required factual or legal bases for his requested relief," reflecting plaintiff's "complete refusal to cooperate" with the District Court's orders granting leave to amend. *Karim-Panahi v. U.S. Cong., Senate & House of Representatives*, 105 F. App'x 270, 274 (D.C. Cir. 2004) (per curiam) (affirming dismissal where, "[f]or example, the appellant's causes of action sought relief for alleged wrongs against groups of people, many of which he is not even part" and "other causes of action sought relief for the failure of the government to provide certain services or benefits, for which the appellant has pled no entitlement"); *Kamdem-Ouaffo v. Huczko*, 810 F. App'x 82, 85 (3d Cir. 2020) (per curiam) (affirming dismissal where the trial court provided "an experienced pro se litigant[] with multiple opportunities to properly plead his case," including "specific instructions for reworking the pleading in a comprehensible manner") (footnote omitted); *cf. Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (reaffirming courts' "power to dismiss a prolix complaint without leave to amend in extraordinary circumstances, such as where leave to amend has previously been given and the successive pleadings remain prolix and unintelligible"). Gallo's repeated failure to identify other potential claims with specificity precludes his assertion of any such claim on appeal. We thus need

not reach the arguments advanced by Gallo or court-appointed *amicus* in support of either his Contracts or Takings Clause claims as to tenants other than Hopkins.

Nor will we take up Gallo's request to resuscitate his pleading by construing it as a facial takings challenge. The Supreme Court has "recognized an important distinction between a claim that the mere enactment of a statute constitutes a taking and a claim that the particular impact of government action on a specific piece of property requires the payment of just compensation." *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 494 (1987). The former challenge, a facial attack, presents an "uphill battle" for Gallo. *Id.* at 495. He must show that the emergency legislation denied him "economically viable use of his land." *Hodel v. Va. Surface Min. & Reclamation Ass'n*, 452 U.S. 264, 295–96 (1981). Although the SAC gestures at a facial challenge, *see* A184–85, 192–97, it does not state such a claim.

As the District highlights, nothing in the moratoria relieved tenants of their obligation to pay rent. And, as the District Court held, "[t]he filing ban only deprived Gallo of economic benefit from those tenants who refused to pay rent *and* failed to quit the premises, such that eviction was necessary." *Gallo*, 2023 WL 7552703, at *6. The SAC does not specify how many of Gallo's tenants would actually qualify for eviction under the RHA. And, as the District Court further held, even for those tenants who breached their leases, "the law did not stop them from accruing liability for money damages over the continued occupation of the units," such that Gallo could ostensibly recoup the economic value of that property. *Id.*; *see also* Appellee Br. 49 (noting that "under the Filing Moratorium, the landlord could pursue eviction and damages for unpaid rent after the emergency ended"); *id.* at 27 (stating that "the District offered $350 million in funding to compensate landlords for lost rent through the Stay DC program"). Gallo thus has not stated a facial takings claim.

## IV.

We thus affirm the District Court's dismissal of the Second Amended Complaint. Accordingly, we deny Gallo's Motion to Reassign Case on Remand as moot.

\*     \*     \*

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or petition for rehearing *en banc*. *See* FED. R. APP. P. 41(b); D.C. CIR. R. 41.

**Per Curiam**

**FOR THE COURT:**
Clifton B. Cislak, Clerk

BY:   /s/
Daniel J. Reidy
Deputy Clerk

8